[L.A. No. 32072. Sept. 25, 1986.]

THOMAS BOWEN, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES' RETIREMENT ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Lemaire & Faunce, Lemaire, Faunce & Katznelson, Mark Ellis Singer, Edward L. Faunce and Steven R. Pingel for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Milton J. Litvin, Assistant County Counsel, and Tina Scarpellino, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**REYNOSO, J.**—In 1980 the Legislature amended the Government Code section dealing with service-connected disability retirement of public employees.[1] The new wording required that employment contribute substantially to an employee's incapacity before the employee could qualify for

---

[1]In this opinion, all statutory references are to the Government Code.

such retirement. Did the amendment change the test for industrial causation, or merely clarify existing law? As we detail below, we conclude that the causation test was not changed.

Thomas Bowen applied for a service-connected disability retirement under section 31720. The Board of Retirement of the Los Angeles County Employees' Retirement Association (Board) denied his application; instead, he was awarded a nonservice-connected pension.[2] The trial court denied Bowen's writ petition for a service-connected disability retirement and the Court of Appeal affirmed. We reverse and remand.

## I.

Bowen worked for the County of Los Angeles as a stenographer from 1956 to 1975, and as an eligibility worker from 1975 to 1977. In May 1977, he broke his ankle in a nonservice-connected accident and never returned to work. Bowen testified that he decided not to return to work because he could not face the stress he experienced in performing his duties, particularly as an eligibility worker. He has been employed only sporadically since May 1977, having found any work situation too stressful.

In May 1978, a psychiatrist found that Bowen was temporarily disabled, and suffering from symptoms of anxiety, depression and alcohol abuse as a result of work stress as an eligibility worker. Bowen applied for a service-connected disability retirement in August 1978. Three doctors examined him between October 1978 and July 1979, and generally found that he had no permanent disability. In September 1979, the Board notified him that he was not disabled from his duties and denied his pension application.

Bowen suffered a heart attack in late July 1979, which apparently caused some permanent heart damage. Medical and psychiatric reports prepared during 1980-1981 indicate that he is totally disabled, attributing from 0 to 50 percent of his disability to industrial factors. At Bowen's request, a hearing before a Board referee was held in November 1981. Based on the referee's recommendation, the Board granted Bowen a nonservice-connected disability pension. The trial court denied Bowen's petition for a peremptory writ of mandate for a service-connected pension and the Court of Appeal affirmed.

## II.

Bowen initially applied for service-connected disability retirement in August 1978. Before his November 1981 hearing, however, the Legislature

---

[2] The amount of an employee's pension varies depending on whether his disability is service connected or nonservice connected. (See §§ 31727, 31727.4, and 31727.7.)

passed an amendment to section 31720 (the 1980 amendment) that became effective on January 1, 1981. Prior to the 1980 amendment, section 31720 provided in pertinent part: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: (a) His incapacity is a result of injury or disease arising out of and in the course of his employment . . . ." The 1980 amendment added the following clause to subdivision (a): "and such employment contributes substantially to such incapacity." It also provided that this "substantial contribution" test "shall be applicable to all applicants for disability retirement on or after the effective date" of the amendment (Jan. 1, 1981).

Bowen contends that the 1980 amendment should not be applied retroactively to persons who applied before its effective date. He bases this first contention on two grounds: (1) rules of construction prevent retroactive application of a statute unless the Legislature expressly and clearly declares its intent that a statute operate retroactively (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865]; *Flint* v. *Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 663 [210 Cal.Rptr. 439]); and (2) any retroactive application of a stricter standard of causation under section 31720 would unconstitutionally impair his vested contractual right to a pension. (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765]; *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 453 [326 P.2d 484].)

Alternatively, in his second contention, Bowen asserts that the trial court and Court of Appeal misinterpreted the substantial contribution test of the 1980 amendment to section 31720. ██ We need only address his second contention in order to resolve this case.[3]

In *Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421 [133 Cal.Rptr. 809], the court interpreted section 31720 in the context of an employee's claim for a service-connected disability pension based on her mental disability. In that case, the Board appealed from a trial court's writ of mandate directing it to grant the employee a service-connected pension. The Board argued that section 31720 required that the employment "be the sole or at least the substantial contributing cause of the disability before retirement disability may be awarded." (*Id.*, at pp. 425-426.) The *Heaton* court rejected this argument, emphasizing that

---

[3]Because the 1980 amendment does not change the test for service-connected disability retirement, there is no need to reach Bowen's arguments regarding the amendment's retroactive application. "An exception to the general rule that statutes are not construed to apply retroactively arises when the legislation merely clarifies existing law. (*Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71].)" (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629].)

section 31720 required only that an incapacity be "'*a* result of injury or disease arising out of and in the course of his employment,' not *the* result thereof." (*Id.*, at p. 428, original italics.)

In a related argument, the Board contended that employment must be the *sole* cause of disability when the employee's permanent incapacity results from mental, rather than physical disability. Otherwise, according to the Board, a psychiatrist would not be able to delimit causation of psychiatric disorders in cases of mental disability. Thus, even an "infinitesimal contribution to the disability might require full contribution." (*Id.*, at pp. 430-431.) The *Heaton* court also rejected this argument, noting that section 31722 explicitly provided for mental as well as physical disabilities. The court concluded that it had "no authority to rewrite the law to conform to [the Board's] view of what it should be. [The Board's] complaint is with the Legislature." (*Id.*, at p. 431.)

After the *Heaton* decision, some trial courts interpreted its holding to mean that even an infinitesimal or inconsequential work-related contribution to disability would suffice for a service-connected disability retirement. (*Van Hook* v. *Board of Retirement* (1983) 148 Cal.App.3d 714, 716, fn. 1 [196 Cal.Rptr. 186]; *DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 396 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150].) In reaction to this interpretation of *Heaton,* many county governments advocated an amendment to section 31720, fearing that the courts' liberal interpretation of industrial causation could threaten the viability of their retirement systems. (Assem. File Analysis, Sen. Bill No. 1076, June 5, 1980.) As originally introduced, the amendment allowed for a service-connected retirement only if the "permanent incapacity is the *principal* result of a substantial employment-caused injury or disease." (Sen. Bill No. 1076 (1979-1980 Reg. Sess.) § 1, italics added.) A Senate analysis of the bill stated that the *Heaton* court "determined that existing law allows an industrial disability retirement allowance to be granted even if the injury in question is not *entirely* service-connected . . . . This bill is an attempt to address that court decision." (Sen. Com. on Pub. Employment & Retirement, May 14, 1979, italics added.)

Following a hearing by the Assembly Committee on Public Employees and Retirement, however, Senate Bill No. 1076 was amended to its present form, including the substantial contribution test for industrial causation. Significantly, the Assembly amendment deleted the requirement that a permanent incapacity be a *principal* result of an employment-caused injury from the bill's final form. In the Assembly Third Reading, the analysis notes that the bill is a response to *Heaton, supra,* 63 Cal.App.3d 421, in which the court stated that "a member is entitled to a service-connected disability if (1) he or she is permanently unable to perform his or her job, and (2)

*any* part of the disability is job-connected." (Assem. Third Reading file analysis, June 5, 1980, original italics.) The analysis also stated that the amendments to Senate Bill No. 1076 "reflect a compromise between supporters of the bill and representatives from labor who strenuously opposed the bill as it was introduced." (*Ibid.*) After the Senate concurred in the amended bill, the Governor signed it into law.

In this case, the Board contends that we should interpret the substantial contribution test of section 31720 to mean more than 50 percent industrial causation. We cannot discern such a purpose in the legislative history of the 1980 amendment. As the court in *Gatewood* v. *Board of Retirement* (1985) 175 Cal.App.3d 311, 318 [220 Cal.Rptr. 724], concluded: "[T]he Legislature intended to disavow the implications of *Heaton* but did not go so far as requiring the disability [to] be the [principal] result of an employment caused injury or illness. In other words, 'contributes substantially' means more than 'any' and less than '[principal].' Beyond this rough bracketing, however, the Legislature provided no clear guide to interpret 'contributes substantially.'" (See also *Lundak* v. *Board of Retirement* (1983) 142 Cal.App.3d 1040, 1045 [191 Cal.Rptr. 446] [Legislature did not promulgate any quantitative guidelines for the word "substantially"].)

In our examination of the 1980 amendment to section 31720, we are guided by the underlying purpose of pension legislation, which "recognize(s) a public obligation to . . . employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services . . . ." (§ 31451.) In accordance with this stated purpose, "pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly." (*Cordell* v. *City of Los Angeles* (1944) 67 Cal.App.2d 257, 266 [154 P.2d 31]; accord, *Gorman* v. *Cranston* (1966) 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133]; *Eichelberger* v. *City of Berkeley* (1956) 46 Cal.2d 182, 188 [293 P.2d 1].)

In the 1980 amendment to section 31720, the Legislature intended to disapprove not the entire body of case law construing that section, but only the "infinitesimal contribution" language in *Heaton*. (*Gatewood* v. *Board of Retirement, supra,* 175 Cal.App.3d at p. 319.) Therefore, we may rely on prior case law to define the appropriate test for industrial causation

under section 31720.[4] For example, in *DePuy* v. *Board of Retirement, supra,* 87 Cal.App.3d 392, 398-399, the court stated that an "infinitesimal" or "inconsequential" connection between employment and disability would be insufficient for a service-connected disability retirement. Instead, the court concluded that "while the causal connection between the [job] stress and the disability may be a small part of the causal factors, it must nevertheless be *real* and *measurable*. There must be substantial evidence of some connection between the disability and the job." (*Id.,* at p. 399, italics added; cf., *Gelman* v. *Board of Retirement* (1978) 85 Cal.App.3d 92, 97 [149 Cal.Rptr. 225] [requiring a "material and traceable" connection between employment and disability].)

This formulation of the substantial contribution test, requiring substantial evidence of a "real and measurable" connection between the disability and employment, would not disturb the Legislature's intent to reject the *Heaton* decision (*supra,* 63 Cal.App.3d 421). The substantial contribution test "would not include *any* contribution of employment to disability, no matter how small and remote." (*Lundak* v. *Board of Retirement, supra,* 142 Cal.App.3d at p. 1046, original italics.) "Indeed, once the *Heaton* implications are checked, there is *no significant difference* between the pre- and postamended section 31720 tests for disability." (*Gatewood* v. *Board of*

---

[4]Bowen urges that we follow the interpretation of "contributes substantially" suggested by the court in *Lundak* v. *Board of Retirement, supra,* 142 Cal.App.3d 1040. After noting that the Legislature did not promulgate any quantitative guidelines concerning the meaning of "substantially" in section 31720, the *Lundak* court turned to the Restatement Second of Torts for assistance in defining that word. The court stated: "One of the requirements for 'legal cause' set forth in section 431 of the Restatement Second of Torts is that negligent conduct be a 'substantial factor' in bringing about harm. Comment a to section 431 distinguishes substantial cause from cause in a philosophical sense in the context of negligent conduct: 'The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.'" (*Id.,* at pp. 1045-1046.)

It could be potentially confusing to use tort definitions of causation to define the phrase "contributes substantially" in section 31720. Generally, courts have found that the County Employees Retirement Act of 1937 (here at issue) and the Workers' Compensation Act "are related in subject matter and harmonious in purpose." (*Kuntz* v. *Kern County Employees' Retirement Assn.* (1976) 64 Cal.App.3d 414, 421 [134 Cal.Rptr. 501]; accord, *Minor* v. *Sonoma County Employees Retirement Bd.* (1975) 53 Cal.App.3d 540, 544 [126 Cal.Rptr. 16].) In fact, courts have looked to workers' compensation law precedent for guidance in contending with similar issues in pension law. (*Buckley* v. *Roche* (1931) 214 Cal. 241, 245 [4 P.2d 929]; *Kuntz* v. *Kern County Employees' Retirement Assn., supra,* 64 Cal.App.3d at p. 421.) In *Maher* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 734, footnote 3 [190 Cal.Rptr. 904, 661 P.2d 1058], we recently concluded that a tort definition of proximate cause is more restrictive than that required in workers' compensation cases. A similar approach seems warranted for pension law cases. Therefore, we choose not to follow the definition of "substantially" suggested by the *Lundak* court.

*Retirement, supra,* 175 Cal.App.3d at p. 319, original italics.) In addition, this definition of substantial contribution also comports with the principle that pension legislation be applied fairly and broadly.

In this case, both the trial court and Court of Appeal rejected the *DePuy* test for a service-connected disability retirement, reasoning that *DePuy* was decided before the 1980 amendment to section 31720. However, we conclude that the 1980 amendment to section 31720 rejected *Heaton* only, and did not change the test for service-connected disability. Accordingly, we reverse the Court of Appeal, and direct that court to remand this case to the trial court so that it may apply the proper test of causation for a service-connected disability retirement when it exercises its independent judgment in evaluating the evidence produced before the Board. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].)

Bird, C. J., Mosk, J., Broussard, J., and Grodin, J., concurred.

**PANELLI, J.,** Concurring and Dissenting.—I concur in the majority opinion insofar as it concludes that the 1980 amendment to section 31720 of the Government Code[1] clarified but did not change the eligibility test for service-connected disability. However, that conclusion does not answer the question of what the Legislature intended by its clarification. It is on this point that the majority and I part company.

I agree that the Legislature intended to abolish the "infinitesimal contribution" causation test by its 1980 amendment to section 31720. I am troubled, however, by the majority holding that the Legislature's "contributes substantially" test requires nothing more than *"substantial evidence* of a 'real and measurable' connection between the disability and employment . . . ." (*Ante,* p. 578, italics added.)

In my view, the Court of Appeal in *Lundak* v. *Board of Retirement* (1983) 142 Cal.App.3d 1040, 1045-1046 [191 Cal.Rptr. 446], properly interpreted the amending language by adopting the Restatement Second of Torts' "substantial factor" causation test. The court noted that "[o]ne of the requirements for 'legal cause' set forth in section 431 of the Restatement . . . is that negligent conduct be a 'substantial factor' in bringing about harm." (*Id.,* at p. 1045.) The word "substantial" has long been a term of art in the context of causal relations in tort law. The Legislature, speaking in terms of causation, could very well have used the term "substantially" to

---

[1]Hereafter, all statutory references are to the Government Code unless otherwise indicated.

indicate its intent that the tort concept of legal causation apply. The "substantial factor" causation test defines a cause as one which is a material element and substantial factor in bringing about a particular result in such a manner "'. . . as to lead *reasonable* men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of *responsibility,* rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. . . .'" (*Lundak, supra,* at pp. 1045-1046.) (Italics added.)

While the "real and measurable connection" causation standard could be read to allow recovery for a cause in the "philosophic sense," the "substantial factor" test makes it clear that the employment-related injury or illness must be a material element and have contributed to the disability in such a manner that *reasonable minds* would find the employment-related condition was in some way *responsible* for the disability. The *Lundak* test thus leaves far less room for confusion and presents far less risk that courts will once again slide down the proverbial slippery slope and return to an "infinitesimal connection" causation test.[2] This result, it strikes me, is exactly what the Legislature intended.

The majority rejects the *Lundak* court's interpretation on two grounds. First, it states that the use of tort concepts could be confusing in the context of employment disability pensions. But tort causation principles have already found their way into both the workers' compensation and employee disability areas. A prime example is the now familiar idea that the tortfeasor takes the plaintiff as he finds him. In both workers' compensation and employment disability retirement law, that concept is translated into the maxim that the employer takes the employee as he finds him. (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 282 [113 Cal.Rptr. 162, 520 P.2d 978]; *Kuntz* v. *Kern County Employees' Retirement Assn.* (1976) 64 Cal.App.3d 414, 421 [134 Cal.Rptr. 501].) No great confusion has resulted from the presence of that tort concept in either area. Instead, the idea has permitted employees to recover for injuries or disabilities caused by work-related aggravations of pre-existing conditions. (See, e.g., *Maher* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729 [190 Cal.Rptr. 904, 661 P.2d 1058]; *Kuntz* v. *Kern County Employees' Retirement Assn., supra,* 64 Cal.App.3d 414.)

---

[2]The "real and measurable connection" test seems to have originated in the preamendment statutory interpretation of *DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 399 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150]. The test may be read consistently with the *Lundak* test. (See *Gatewood* v. *Board of Retirement* (1985) 175 Cal.App.3d 311, 320 [220 Cal.Rptr. 724].) However, as noted above, the "substantial factor" test is both more faithful to the statutory language and less likely to be misinterpreted.

Second, the majority contends that the rejection in the workers' compensation context of the tort definition of proximate cause should extend to the employment disability context since the two are related. It is true, as the majority indicates, that we have looked to workers' compensation cases for guidance when considering issues arising in the area of employee disability retirement compensation. Nevertheless, where the statutory language is different and the intent of the Legislature would be thwarted by responding to an employee retirement pension question with a workers' compensation rule, I believe that the analogy between the two areas is no longer useful.

The majority points out that we recently reaffirmed the long standing rule that the "proximate cause" requirement of section 3600 of the Labor Code is less stringent than the tort concept of proximate causation. (*Maher* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d at p. 734, fn. 3.) Had the Legislature in amending section 31720 adopted the "proximately caused" language of Labor Code section 3600, I might be more easily persuaded that it intended the less stringent workers' compensation standard of causation to apply. However, the use of the specific language "substantially contributes" indicates to me that the Legislature did in fact intend a more stringent standard to apply. And in any event, even the majority does not advocate the wholesale adoption of the workers' compensation causation standard.

I believe the *Lundak* court correctly concluded that the "substantial factor" test would serve the Legislature's intent to restrict the liberality of courts applying the "infinitesimal contribution" causation test without vitiating the "well-settled principle, cited [by the majority], that pension legislation must be applied fairly and broadly." (*Lundak, supra,* 142 Cal.App.3d at p. 1046.) Accordingly, I would adopt the *Lundak* definition of "contributes substantially."

**LUCAS, J.**—I respectfully dissent. The majority concludes that the 1980 amendment to Government Code section 31720[1] (the 1980 amendment) merely clarifies, without substantive change, the existing test for industrial causation for service-connected disability retirement. (*Ante,* p. 578.) In reaching this result, the majority adopts the judicially created test for causation set out in *DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 398-399 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150], a *preamendment* case. I disapprove of applying the *DePuy* test because it does not address the requirement, added by the 1980 amendment, that the employment "contributes substantially" to an incapacity in order to qualify for a service-connected disability retirement. Instead, *DePuy* espouses two standards,

---

[1]All further statutory references are to this code unless otherwise specified.

neither of which provides relevant guidelines for interpreting the 1980 amendment: a preamendment test for industrial causation, and an evidentiary test to determine if such causation has been proved. In my opinion, the Legislature intended a substantive change when it enacted the 1980 amendment and the majority has failed entirely to deal with the difficult problem of giving effect to that change.

## I. *The History and Application of the 1980 Amendment*

Resolution of the meaning of the 1980 amendment first requires considering the chronology of events that led to the Legislature's amendment of section 31720.

### A. *Rau*

An applicant for disability retirement benefits is entitled to what is generally a higher pension rate if the disability is service connected. The standard for finding a "service-connected" disability is set by section 31720. Prior to the 1980 amendment at issue (eff. Jan. 1, 1981), that section provided in pertinent part: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: (a) His incapacity is *a* result of injury or disease arising out of and in the course of his employment. . . ." (Italics added.)

In *Rau* v. *Sacramento County Ret. Bd.* (1966) 247 Cal.App.2d 234, 236 [55 Cal.Rptr. 296], one of the first cases to mention unamended section 31720, the court characterized the section as providing a "comprehensive legislative enactment for the determination of the rights of a county employee to be retired for disability." In concluding there was sufficient evidence to support the board's decision, *Rau* did not, however, discuss the portion of section 31720's language requiring that the disability be *a* result of an injury or illness arising out of and in the course of employment.

### B. *Heaton*

Not until 10 years later did the Court of Appeal for the first time directly consider the meaning of the applicable language of section 31720. (*Heaton* v. *Marin County Employment Retirement Bd.* (1978) 63 Cal.App.3d 421 [133 Cal.Rptr. 809].) In *Heaton,* a county employee claimed a service-connected disability pension based on a mental disability and asserted her employment was the principal cause of the disability. Despite the hearing officer's finding that the employee's disability was service connected, the board denied the application. The Court of Appeal affirmed the superior court conclusion that (1) the board's rejection of the hearing officer's find-

ing constituted an abuse of discretion, and (2) the employee was entitled to a service-connected disability retirement.

In *Heaton,* the board challenged the trial court's interpretation of section 31720 as providing that even if a disability arose for a variety of reasons, the fact that a *part* of the disability was employment-caused provided a sufficient basis to award a service-connected disability pension. Instead, the board contended that section 31720 required "the employment be the *sole or at least the substantial contributing cause* of the disability before retirement disability may be awarded." (63 Cal.App.3d at pp. 425-426, italics added.)

Finding this a question of "first impression," the *Heaton* court rejected the board's argument. It reasoned: "A simple reading of . . . section 31720 does not disclose the requirement which [the board] would propose." (63 Cal.App.3d at p. 428.) The court emphasized that the section required only that the incapacity be "'*a* result of injury or disease arising out of and in the course of his employment,' not *the* result thereof." (*Ibid.*) The court explained that the interpretation suggested by the board would require it to "rewrite the statute" and that the court's function was not to legislate or to severely limit the statute's then "present applicability." (*Id.* at p. 429.) The board's remedy, the court observed, was with the Legislature. (*Id.* at p. 431.) Thus, the *Heaton* court rejected the board's attempt to set the quantitative measure of industrial causation at a substantial level, based on the express statutory language which at the time required *only* that the employment be *a* cause of the disability.

## C. *Subsequent Cases—DePuy*

Various courts interpreted *Heaton* to hold that even an "inconsequential" or "infinitesimal" connection between the disability and the employment entitled an employee to a service-connected disability retirement. (See, e.g., *Van Hook* v. *Board of Retirement* (1983) 148 Cal.App.3d 714, 716, fn. 1 [196 Cal.Rptr. 186]; *DePuy* v. *Board of Retirement, supra,* 87 Cal.App.3d at p. 396.) These interpretations apparently followed from the *Heaton* court's rejection of the board's argument that where incapacity is due to mental disability, employment must be the sole or primary cause in order to prevent an "infinitesimal contribution" from justifying full compensation. (*Heaton, supra,* 63 Cal.App.3d at pp. 430-431.)

The appellate court in *DePuy* attempted to moderate the application of an "infinitesimal contribution" standard by requiring that while employment-related disability could be a very "small" part of the causal factors, it must nonetheless be "real and measurable." (87 Cal.App.3d at p. 399.)

The *DePuy* court also set forth the applicable evidentiary standard: "There must be substantial evidence of some connection between the disability and the job." (*Ibid.*) *DePuy* thus interpreted the *preamendment* version of section 31720 in light of *Heaton,* as well as enunciating the appropriate measure of proof. Its discussion thus addressed some of the more extreme interpretations of *Heaton,* but did not purport to reconsider the issue of "substantial contribution" raised by the board in the earlier case.

## II. *The Meaning of the 1980 Amendment*

### A. *Legislative Intent*

The legislative history indicates that following *Heaton* and its progeny, various counties urged a change in existing law, fearing that liberal interpretations of industrial causation would cause "the cost of county disability programs [to] grow to prohibitive levels." (Assem. File Analysis, Sen. Bill No. 1076, June 5, 1980; see *Lundak* v. *Board of Retirement* (1983) 142 Cal.App.3d 1040, 1045 [191 Cal.Rptr. 446].) As the majority accurately traces, the legislative response in enacting the 1980 amendment was intended to disavow the implications of *Heaton,* but not to go so far as to require that the disability be *principally* caused by an employment-related factor. (*Ante,* p. 577.) The Assembly retreated from its originally drafted requirement that the incapacity be the *principal* result of the employment-caused injury and substituted the current language which added to the original statute the requirement that the "employment contributes substantially" to the incapacity. This final form apparently reflected a compromise between the bill's supporters and labor representatives who strenuously opposed any change. Based on this legislative history, I agree with the majority that "'contributes substantially' means more than 'any' and less than '[principal].'" (*Ibid.*)

However, I disagree with the majority's holding that the 1980 amendment's *only* purpose was to disapprove the "infinitesimal contribution" language in *Heaton* and not the entire body of case law construing that preamendment section. (*Ante,* p. 577.)[2] Instead, I find the legislative history and the plain language of the amendment demonstrates that a *new quantitative* measure for the amount of connection or causation between employment and disability was fashioned.

First, the fact that the Legislature chose to adopt totally new language rather than defining previous language indicates that the amendment was

---

[2] Of course, the entire relevant body of case law was post-*Heaton,* thus reflecting or in some manner responding to that case's views.

not intended to simply reaffirm the pre-*Heaton* or *Heaton* standard or to encapsulate the *DePuy* approach. If the Legislature had intended that the amendment only eliminate the "infinitesimal" language of *Heaton,* it could have done so expressly and directly.

Instead, the Legislature added a completely new formulation for service-connected disability by requiring that the employment "contributes substantially" to a disability. Moreover, the fact that this precise wording was a compromise result after an initial attempt to require that employment be the "principal" cause of disability further demonstrates an intent to develop a new and stricter standard for industrial causation.

This conclusion is also supported by the "Comment" to the Third Assembly Amendments dated May 6, 1980, which states: "This bill is one of numerous measures in response to a recent court decision, Heaton vs. the Marin County Board of Retirement, which stated that a member is entitled to a service-connected disability if (1) he or she is permanently unable to perform his or her job, and (2) *any* part of the disability is job-connected." (Original italics.) Thus, the expressed reason for the bill shows the Legislature's response addressed the quantitative measure of industrial causation and was intended to reject the idea that *any* employment connection to the disability was sufficient.

As noted in *Heaton,* the court rejected the board's suggestion that the employment "contributes substantially" to the disability in favor of a standard that "any" contribution would suffice. The Legislature soon thereafter amended the statute to explicitly provide for a substantial contribution requirement, one of the standards the board originally proposed in *Heaton.* It seems implausible to suggest, as the majority does, that the 1980 amendment signals a simple return to a pre-*Heaton* standard, requiring only that employment be "a cause" of the disability in order to qualify for a service-connected disability retirement. Even after the appellate court in *DePuy* rejected the post-*Heaton* interpretation of "infinitesimal contribution" and *reinstated the standard of minimal contribution,* the Legislature found further intervention was necessary to arrive at a workable standard.

The Legislature further indicated its belief that the 1980 amendment constituted a change in the law by providing that the substantial-contribution test "shall be applicable to all applicants for disability retirement on or after the effective date" of the amendment. If no change was intended, not only from *Heaton*'s standard, but from the standard applied in *DePuy,* this additional provision would have been unnecessary.

Thus, the majority's return to the *DePuy* test, requiring only that the employment's contribution to the disability be "real and measurable,"

does not properly take into account the intended effect of the 1980 amendment. Under *DePuy,* "any" connection other than an infinitesimal one will suffice so long as it is supported by sufficient evidence of a connection. The *DePuy* language relied upon by the majority does not address the changed quantitative measure of causation enacted by the Legislature. The majority has misapplied *DePuy* in interpreting the 1980 amendment and, in doing so, confuses the new language's meaning and reduces its intended impact. Because the majority's purported authority is of no assistance, and because the Legislature did not promulgate any other guidelines as to what is meant by "substantially" in the 1980 amendment, the proper course requires us to look to other sources.

B. *Proposed Interpretations*

Various tests to determine the meaning of the amendment's "contributes substantially" language have been proposed. Petitioner Bowen urges that we follow the interpretation which was suggested in *Lundak* v. *Board of Retirement, supra,* 142 Cal.App.3d at page 1046, while the board suggests we look to common definitions for the word "substantial" or, alternatively, require a percent greater than 50 to determine industrial causation.

In *Lundak,* the court looked to the Restatement Second of Torts for assistance and analogized to the test for "legal cause"; namely, that negligent conduct is a "substantial factor" in bringing about harm. (142 Cal.App.3d at p. 1045.) In the context of tort law, the *Lundak* court stated the word "'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." (*Id.* at pp. 1045-1046, quoting Rest.2d Torts, § 431, com. a.)

The *Lundak* test for "substantial" is inappropriate, in my view, to interpret the 1980 amendment. In *Lundak,* the court found that medical testimony regarding the contribution of the employee's work-related accident to his disability clearly established that it was more than "inconsequential," placing it somewhere between 10 and 60 percent. The court noted that the disability met the "real and measurable" test of *DePuy* and reasoned the *tort* definition of substantial would be consistent with the Legislature's intent to restrict *Heaton*'s liberal awards of service-connected disability benefits. Thus, the *Lundak* definition "would not include *any* contribution of employment to disability, no matter how small and remote." (142 Cal.App.3d at p. 1046, original italics.) Yet, the *Lundak*

court concluded: "We think reasonable people would regard [the employee's] employment as *a* cause of his disability. . . . We hold, therefore, that . . . employment contributed substantially to his disability and that the terms set forth in subdivision (a) of Government Code section 31720, as amended, are satisfied." (*Ibid.,* italics added.)

I would conclude that *Lundak* does not represent an appropriate quantitative measure of industrial causation: all that is required is *a* cause or the "idea" of responsibility. This standard, like that in *DePuy,* will permit qualification for a service-connected disability retirement under a far more liberal measure than the Legislature intended when it amended section 31720. *Lundak* does not discuss the question of whether the 1980 amendment works a substantive change in the law. Instead, it seems to continue to employ the standards of *DePuy,* a result I believe the Legislature did not intend.

In concluding that the Legislature's *only* intent was to reject *Heaton* and its progeny, permitting full disability pensions based on "infinitesimal" contributions, the majority ignores the basic rule of statutory construction which instructs that we should give effect to a statute according to the usual ordinary import of the language employed in framing it after looking to the legislative intent. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) Thus, we must examine the language added by the 1980 amendment to determine what standard would accord with the effect sought by the Legislature.

The board advances commonly used definitions such as "main part of," "significant," and "preponderance" to elaborate on the meaning of the amendment's requirement of "contributes substantially." It alternatively suggests a minimum 50 percent industrial-causation test.

I do not believe the test of causation should require 50 percent causation from employment. The legislative history instructs that the word "principal" was replaced with "substantial," indicating the quantitative measure was intended to be less than 50 percent or the primary cause. However, to contribute "substantially," the amount attributable to employment must be more than a "small" but "real and measurable" amount of contribution. I believe that more is necessary than the 10 percent or less that *DePuy* and *Lundak* suggest.

Based on both the plain meaning of the statute and the legislative history, I would conclude employment must contribute more than 10 percent to a disability in order to qualify for a service-connected disability retire-

ment under the 1980 amendment. In my view, a test requiring that a greater percentage of the disability be employment-caused would reflect the intended meaning of the 1980 amendment while serving broadly and fairly to award service-connected disability pensions to qualified individuals.

Such an interpretation would further the purpose of the amendment by relieving the financial pressure on counties in awarding service-connected disability retirements. Legislative hearings prior to the enactment of the 1980 amendment indicated that the concern generated by the minimal contribution approach arose out of the fact that it can be argued that almost any injury or disease is service connected to some very small degree.

Statistics were presented at the legislative hearings for the previous 20 years which demonstrated a very rapid increase in service-connected disability retirements following the decision in *Heaton*. The cost of disability pensions in one county alone was projected as amounting to almost $1 million annually within the next five or six years. Although disability claims had risen in general over the years, the accelerated increase following *Heaton* threatened the system, and resulted in the move for legislative change.

A requirement that industrial causation amount to more than 10 percent would serve the goals of those both seeking and enacting the amendment and end inappropriate awards of service-connected disability retirement based on disabilities whose genesis had very little to do with the service itself. It would secure such awards for those who should be entitled to compensation because their employment had contributed substantially to their disability, thus preserving the financial integrity of the system for all those who *fairly* qualify for disability pension benefits.[3]

## III. *Conclusion*

In sum, I disagree with the majority that the 1980 amendment did not substantively change the test for service-connected disability. In my view, the 1980 amendment imposed a new and higher standard for industrial causation, which clearly constitutes a substantive change. Such a change would, of course, necessitate considering the arguments regarding retroactive application, including possible limitations due to constitutionally vested pension rights. By concluding that the 1980 amendment signals *only* a return to the pre-*Heaton* standard of industrial causation, thereby avoiding the need to consider its retroactive effect, the majority evades its re-

---

[3]Of course, nothing in this formulation would alter a person's entitlement to regular pension or nonservice-connected disability benefits.

sponsibility to interpret the statute accurately and to provide guidance in applying pension legislation in a fair manner and in accordance with the Legislature's intent.

Respondent's petition for a rehearing was denied October 30, 1986. Lucas, J., and Panelli, J., were of the opinion that the petition should be granted.