[No. D006042. Fourth Dist., Div. One. May 2, 1988.]

CINDY LOU BURDICK, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF SAN DIEGO COUNTY
EMPLOYEES' RETIREMENT ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Georgiou & Tosdal and John Garcia for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Edmund E. Mozulay, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**KREMER, P. J.**—Cindy Burdick appeals a judgment denying her petition for writ of mandate against the Board of Retirement of the San Diego County Employees' Retirement Association (Board). We reverse the judgment and direct the superior court to grant the writ.

I

On May 17, 1974, Burdick applied to the County of San Diego (County) to work as an intermediate clerk typist. Answering an application question about whether she had any infirmity or physical defect, Burdick wrote: "Diabetes: A diabetic for 16 yrs. Is controlled by a doctors care—Have had no trouble." On August 29, 1974, as required by the County as a condition of employment, Burdick signed a waiver of any rights to a disability retirement resulting from diabetes or any related conditions. On September 6, 1974, Burdick entered County service.

During 1984 and 1985 Burdick was diagnosed as legally blind and suffering from neuropathy, complications resulting from diabetes. A County-requested medical examination disclosed Burdick was unable to perform many of her job duties requiring visual skills.

In July 1985 Burdick applied to the Board for nonservice connected disability retirement. The Board denied Burdick's application because she had signed the waiver.

## II

Burdick sought mandate in the superior court to set aside the Board's decision. Burdick contended the waiver was invalid because the County did not have legal authority to require its execution. The court denied Burdick's petition for mandate, concluding the waiver was valid. Burdick appeals, claiming entitlement to disability retirement because the waiver was invalid and unenforceable. We agree.

## III

Government Code section 31720 provides in relevant part: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: [¶] [¶] (b) The member has completed five years of service, and [¶] (c) The member has not waived retirement in respect to the particular incapacity or aggravation thereof as provided by Section 31009."

Government Code section 31009 in effect in 1974 provided in relevant part: "Any applicant for employment who does not meet the physical standards established for his employment because of a physical impairment existing on the date of his employment may be required by the county as a condition to such employment to execute a waiver of any and all rights to a disability retirement under the County Employees Retirement Law of 1937 arising as a result of such impairment or any aggravation thereof while in county service."[1] (Fn. omitted.)

---

[1] In 1980 the Legislature amended section 31009 to read in relevant part: *"Prior to January 1, 1981,* an applicant for employment who does not meet the physical standards established for his employment because of a physical impairment existing on the date of his employment may be required by the county as a condition to such employment to execute a waiver of any and all rights to a disability retirement under the County Employees Retirement Law of 1937 arising as a result of such impairment or any aggravation thereof while in county service." (Italics added.)

The amendment's temporal limit on counties' authority to require disability retirement waivers suggests any public policy favoring enforcing such waivers is diluted.

Effective July 1, 1974, Labor Code section 1420 provided in relevant part: "It shall be an unlawful employment practice, *unless based upon a bona fide occupational qualification . . . :* [¶] (a) For an employer, because of the . . . physical handicap . . . of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment. [¶] Nothing in this part shall prohibit an employer from refusing to hire or discharging a physically handicapped employee, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of a physically handicapped employee, *where the employee, because of his physical handicap, is unable to perform his duties, or he cannot perform such duties in a manner which would not endanger his health or safety or the health and safety of others.* [¶] [¶] (d) For any employer . . . to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . physical handicap . . . or any intent to make any such limitation, specification or discrimination."[2] (Italics added.)

---

[2] Effective August 30, 1974, the following language was added to Labor Code section 1420, subdivision (d): "Nothing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or a request for information regarding, the physical fitness of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for."

Labor Code section 1420 was repealed in 1980. Its subject matter is now covered by Government Code section 12940.

Government Code section 12940 provides in relevant part: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification . . . ,

"(a) For an employer, because of the . . . physical handicap [or] medical condition . . . of any person . . . to discriminate against the person in compensation or in terms, conditions or privileges of employment.

"(1) Nothing in this part shall prohibit an employer from refusing to hire or discharging a physically handicapped employee, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of a physically handicapped employee, where the employee, because of his or her physical handicap, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger his or her health or safety or the health and safety of others.

"(2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health and safety of others.

". . . . . . . . . . . . . . . . . . .

"(d) For any employer . . . to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to . . . physical handicap [or] medical condition . . . or any intent to make any such limitation, specification or discrimination. Nothing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or a request for information regarding, the physical fitness, medical condi-

Labor Code section 1420 applied to counties. (Former Lab. Code, § 1413, subd. (d), now Gov. Code, § 12926, subd. (c).)

Government Code section 3550 in effect in 1974 provided: "(a) It is the policy of this state to encourage and enable blind persons, visually handicapped persons, and other physically disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment. [¶] (b) It is the policy of this state that blind persons, visually handicapped persons and other physically disabled persons shall be employed in the state service, the service of the political subdivisions of the state, in public schools, and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied, *unless it is shown that the particular disability prevents the performance of the work involved.*" (Italics added.)[3]

## IV

■ "The right to a pension is among those rights clearly 'favored' by the law." (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 390 [216 Cal.Rptr. 733, 703 P.2d 73].) The underlying purpose of pension legislation is to ". . . recognize a public obligation to . . . employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed." (Gov. Code, § 31451.) "In accordance with this stated purpose, 'pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly.' [Citations.]" (*Bowen* v. *Board of Retirement* (1986) 42 Cal.3d 572, 577 [229 Cal.Rptr. 814, 724 P.2d 500].)

■ "No person can be denied government employment because of factors unconnected with the responsibilities of that employment." (*Morrison*

---

tion, physical condition or medical history of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for or directly related to a determination of whether the applicant would endanger his or her health or safety or the health or safety of others."

[3] The subject matter of former Government Code section 3550 is now covered by Government Code section 19230.

v. *State Board of Education* (1969) 1 Cal.3d 214, 234 [82 Cal.Rptr. 175, 461 P.2d 375].) Government Code section 31009 authorized the County to require a disability retirement waiver from an applicant for employment not meeting the "physical standards established for his employment because of a physical impairment." ■ Construing Government Code section 31009 to uphold its constitutionality, we find the statute's language "physical standards" refers to standards restricting the employment of applicants with *job-related* impairments. (Accord, 64 Ops.Cal.Atty.Gen. 837, 842-843 (1981), citing *County of Los Angeles* v. *Riley* (1936) 6 Cal.2d 625, 628-629 [59 P.2d 139, 106 A.L.R. 903]; *Dept. of Alcoholic Bev. Control* v. *Superior Court* (1968) 268 Cal.App.2d 67, 74 [73 Cal.Rptr. 780].) Our conclusion also harmonizes Government Code section 31009 with former Labor Code section 1420, former Government Code section 3550 and the policy underlying pension legislation.[4]

V

■ In determining the validity of the waiver executed by Burdick, the crucial issue is whether her diabetic condition when she applied for County employment constituted a job-related impairment. The record contains no evidence Burdick's diabetic condition at that time made her unable to perform her duties as an intermediate clerk typist or unable to perform such duties in a manner not dangerous to the health and safety of herself or others. The waiver was not based upon a job-related impairment or any other bona fide occupational qualification. Thus, the waiver is unenforceable against Burdick.

At the Board hearing Burdick testified when applying for County employment as an intermediate clerk typist she had no symptoms from diabetes, no loss of vision and no physical problems whatsoever. Burdick also testified she had not been told by a doctor to avoid any activities because of diabetes and there were no activities she chose to avoid. Also in evidence was Burdick's job application stating she had been a diabetic for 16 years, her diabetes was under medical control and it had caused her no trouble. The County presented no contrary evidence. At the Board hearing, Burdick also testified the County's preemployment medical examiner checked only her blood pressure, eyes and weight. The County did not introduce the medical examination report or offer any other evidence suggesting Burdick's medical examination revealed any job-related impairment. The County made no showing Burdick's diabetic condition would pose a danger to

---

[4] We note the Attorney General has opined: "Section 31009 as originally enacted was obviously intended and designed to encourage the employment of applicants with physical impairment who would otherwise have been disqualified for failure to meet established *job-related* physical standards." (64 Ops.Cal.Atty.Gen., *supra*, at p. 843, italics added.)

the health or safety of herself or others. Further, the County made no showing it was reasonably foreseeable the nature of Burdick's duties as an intermediate clerk typist was likely to aggravate her diabetic condition and enhance the probability of disability and retirement. (64 Ops.Cal.Atty.Gen., *supra,* at p. 843, citing *Smith* v. *Olin Chemical Corp.* (5th Cir. 1977) 555 F.2d 1283, 1287-1288 [36 A.L.R.Fed. 709].)

To support its contention the waiver was valid, the County introduced into evidence a document entitled "County of San Diego Medical Examination Program" (the guidelines). The County contended the guidelines established physical standards for employment for purposes of Government Code section 31009. However, the County's reliance on the guidelines is unavailing. Scrutiny of the guidelines reveals the medical standards they purported to establish were not based solely upon job-related considerations.[5] Portions of the guidelines betray the influence of economic factors.[6] Most telling are the guidelines' instructions to the examining physician. The guidelines directed the physician to indicate "which disqualifications would not interfere with job requirements" and to recommend processing disability retirement waiver "[i]f disability retirement the only risk." The guidelines also provided: "If the medical counselor determines that disability retirement is the only risk, notify candidate on failure notice that we will consider permanent medical waiver if he agrees to waive disability retirement." The guidelines further provided: "If physician has indicated that disability retirement the only risk, notify candidate on failure notice that we will consider permanent medical waiver if he agrees to waive disability retirement."

Moreover, although listing diabetes or history of diabetes as not acceptable for any employment category, the guidelines provided employees with controlled diabetes could return to work under certain circumstances: "After review of attending physician's report, at discretion of examining physician, the employee may return to work when diabetes has been brought under stabilized control, provided the work does not involve operation of motorized equipment or working on scaffolds or other heights." Thus, the

---

[5] Indeed, a job-related basis is not always apparent on the face of the guidelines. Disqualifying conditions listed in the guidelines included physique not meeting specified height or weight standards, post nasal drip, severe hemorrhoids and the absence of both testicles.

[6] We note California Code of Regulations (formerly Cal. Admin. Code), title 2, section 7293.8, subdivision (d), adopted in 1980, provides: " . . . it is no defense to assert that a qualified handicapped individual has a condition or a disease with a future risk, so long as the condition or disease does not presently interfere with his or her ability to perform the job in a manner that will not immediately endanger the handicapped individual or others, and the individual is able to safely perform the job over a reasonable length of time. 'A reasonable length of time' is to be determined on an individual basis."

guidelines themselves do not treat controlled diabetes as a condition necessarily interfering with job performance.[7]

In summary, on this record the County was not justified in requiring Burdick to execute a waiver of her disability retirement benefits as a condition of employment. At the time Burdick was required to execute the waiver, her controlled diabetes did not interfere with her ability to perform as an intermediate clerk typist or pose a risk to the health and safety of herself or others. It was not reasonably foreseeable her job duties would likely aggravate her diabetic condition or enhance the probability of disability. The County's discrimination against Burdick in the terms, conditions and privileges of employment was impermissible because her controlled diabetes did not constitute a job-related impairment.

The superior court should have granted Burdick's petition for mandate.

## VI

 Asserting the Board's conduct in denying her application for disability retirement was arbitrary or capricious, Burdick contends she is entitled to attorney fees under Government Code section 800. We disagree. The Board apparently misconstrued applicable statutes as authorizing a waiver where a medical condition might entail any risk of premature disability retirement. However, erroneous interpretation of the law does not necessarily mean the Board's action was arbitrary or capricious. (*Indian Springs* v. *Palm Desert Rent Review Bd.* (1987) 193 Cal.App.3d 127, 137-138 [238 Cal.Rptr. 112].) Burdick has identified nothing in the record justifying a conclusion the Board's actions were arbitrary or motivated by caprice.

### DISPOSITION

The judgment is reversed. The superior court is directed to issue a writ of mandate ordering respondent to grant Burdick's application for a nonservice connected disability retirement. Burdick's request for attorney fees

---

[7] We note the record shows Burdick was in fact able to work as an intermediate clerk typist from 1974 to 1984. Her employee performance reports contained overall ratings of "above standard" and "standard." Moreover, 88 of Burdick's coworkers signed a letter stating she was a "conscientious" and "valuable" employee.

under Government Code section 800 is denied. Burdick is entitled to costs on appeal.

Todd, J., and Haden, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.