No. 15,879.

INDUSTRIAL COMMISSION ET AL. *v.* MESSINGER.

(181 P. [2d] 816)

Decided May 26, 1947.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, BARBARA LEE, Assistant, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error.

Mr. George H. Lerg, Mr. A. L. Betke, for defendant in error.

*En Banc.*

Mr. Justice Luxford delivered the opinion of the court.

This is a workmen's compensation case. For convenience, we will refer to the parties as follows: Industrial Commission of Colorado, as the Commission, Danny's Inc., as the employer, State Compensation Fund, as the Fund and defendant in error, Mary Cecelia Messinger, as Claimant.

Claimant was a waitress handling food in a local restaurant. She was directed by her employer to secure a health certificate, and submitted herself to a physician who drew from her arm some blood for the purpose of making the blood test required by law. The lesion made by the physician became infected, and as a result of the disability thus created she was forced to leave her employment. She filed her claim in due course with the Commission which claim was contested by the Fund. The Commission disallowed the claim. In an appropriate action in the district court, this ruling of the Commission was reversed, and judgment duly entered for Claimant. Error is assigned and the proceedings are presented here for review.

The points urged for reversal are: (1) That the Commission was right in finding as a fact that Claimant's injury did not arise out of and in the course of her employment; and (2) that it properly applied the law to the facts in denying Claimant compensation. These subjects will be considered together.

It is admitted that Claimant did sustain a physical injury, and that it was the result of an accident. Whether or not this accident "arose out of and in the course of her employment" depends upon the circum-

stances under which she submitted to the blood test. The evidence shows that she and other employees were ordered by their employer to have a blood test made. They were not directed to go to any particular physician, but were advised that if they went to a certain doctor the charge for the tests would be two dollars each. Claimant went to a physician of her own choosing for the test. Here it may be noted that the whole subject of the regulation of restaurants, including the requirement of blood tests for those handling food therein, is covered by statute. The Colorado General Assembly created the State Board of Health ('35 C.S.A., c. 78), which it empowered, "To establish a uniform code of sanitary rules and regulations for the preparation, sale and serving of 'food'." ('35 C.S.A., c. 81, §17 [b]). It provided also that the operator of a restaurant must have a license issued by the state board ('35 C.S.A., c. 81, §18); that the code of sanitary rules and regulations shall include medical examination of all restaurant employees handling food; makes it the duty of the licensee to see that the code of sanitary rules and regulations is enforced, and provides a penalty for failure to do so ('35 C.S.A., c. 81, §22). Section V, section 5, of said code provides, inter alia: "All persons engaged in the handling of food, drink, utensils, or equipment shall obtain a permit card from the State Board of Health." Regulation 6 under the state board's laws, rules and regulations provides: "All persons engaged in the handling and preparation of food shall obtain a permit card from the State Board of Health. Application for a permit card shall be made on a form furnished by the board and shall include a report from a licensed physician stating that the applicant has been examined and found free of communicable disease. Examination shall include a blood test and other laboratory reports as indicated."

■ From the foregoing it is apparent that the employer was obligated by the state law to have Claimant obtain a health certificate. It was not his regulation or

requirement, it was that of the state. Claimant was incapacitated by reason of her compliance therewith. Obviously, as the Commission found, her accident did not arise out of and in the course of her employment.

We have not found, nor has any case been cited involving the question here presented. Cases where employees have been injured as a result of vaccination or inoculation present similar legal problems. There are only a few of them and all which have been called to our attention have been considered. What they hold is, that the right to compensation is determined by the construction placed on the phrase, "Arising out of and in the course of employment," and its application to the facts in each particular case. Compensation was allowed in those cases where the vaccination or inoculation was performed for the benefit of the employer, and had been required by him. *Neudeck v. Ford Motor Company,* 249 Mich. 690, 229 N.W. 438; *Spicer Mfg. Co. v. Tucker,* 127 O. St. 421, 188 N.E. 870; *Smith v. Brown Paper Mill Co.* (La. App.), 152 So. 700.

On the other hand, compensation was denied in those cases where it appeared that vaccination or inoculation was made necessary by reason of public requirement. *Smith v. Seamless Rubber Co.,* 111 Conn. 365, 150 Atl. 110, and *Jefferson Printing Co. v. Industrial Commission,* 312 Ill. 575, 144 N.E. 356. The court rested its decision in these cases upon the ground that the proof disclosed affirmatively that the vaccination was not ordered or in any wise brought about by the employer, but by a public agency for the public interest; and further, that the infection was not in anywise due or attributable to the work or place of work, or to the character of business or service of the employer.

It is true that in the instant case Claimant was ordered by her employer to take the blood test. This he was legally obligated to do under the statute (§22 supra). We are of the opinion that the Commission was

right in finding that Claimant's accident did not arise out of and in the course of her employment.

We said in *Carbone & Co. v. MacGregor*, 113 Colo. 241, 155 P. (2d) 994 that: "In the trial judge's decision we recognize the generous heart promptings for which he is known and beloved, but, as we think, the unfavorable findings by the tribunal authorized by the enactment on which the claim is presented, to make them, concluded the trial court and likewise concludes us."

The judgment is reversed.

MR. JUSTICE STONE and MR. JUSTICE HAYS dissent.