[L.A. No. 31640. Apr. 25, 1983.]

CAROL A. MAHER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
SAN CLEMENTE GENERAL HOSPITAL et al., Respondents.

**COUNSEL**

Byhower & Petherbridge and Merle C. Rabine for Petitioner.

Zonni, Ginocchio & Taylor, Leonard J. Silberman, Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Robert J. La Porta for Respondents.

C. Gordon Taylor, Kegel, Tobin & Hamrick, David E. Lister and Stephan G. Thompson as Amici Curiae on behalf of Respondents.

---

**OPINION**

**BIRD, C. J.**—Is an employee entitled to compensation benefits for an injury sustained during treatment for a preexisting disease if the treatment is required as a condition of continued employment?

## I.

Petitioner, Carol Maher, obtained employment as a nurse's assistant at the San Clemente General Hospital on April 20, 1979. By law, all prospective hospital employees are required to undergo a physical examination which includes a test for tuberculosis. (See Cal. Admin. Code, tit. 22, § 70723.)[1] Maher's examination took place on April 21, 1979. Two days later, the hospital's nurse-epidemiologist, Helen Kapuzki, notified Maher that her tuberculosis skin test was positive, indicating that she had been exposed to and might have contracted the disease sometime prior to her employment. Maher's chest X-ray tended to confirm the results of the skin test. At a meeting with Kapuzki

---

[1] Section 70723, read in pertinent part as follows: "(b) A health examination performed under the direction of a physician shall be required as a requisite for employment and must be performed within one week after employment. . . . Repeat examinations shall be performed whenever necessary to ascertain that employees are free from symptoms indicating the presence of infectious disease and are able to perform their assigned duties. Upon initial examination, and at least annually, the employee shall have a skin test for tuberculosis . . . or a chest X-ray. Positive reaction to the skin test shall be followed by a . . . chest X-ray."

the following day, Maher was told that she would be required to undergo treatment for tuberculosis in order to continue working at the hospital. She was given the choice of obtaining such treatment either through the county health department or from a private physician.

Maher agreed to undergo treatment at the Orange County Health Department. The therapeutic regimen required her to take a combination of three antituberculosis drugs. While undergoing treatment, she continued to work at the hospital.

Maher soon developed a significant adverse reaction to the drugs. She suffered from dizziness, headaches, and frequent bouts of nausea, vomiting and diarrhea. When these symptoms persisted, despite efforts to alleviate them, Maher asked the hospital if she could stop taking the drugs. She was told that she could not do so if she wished to continue working at the hospital. Not surprisingly, Maher continued taking the medications.

In June of 1979, Maher's condition worsened. She developed blurred vision and a partial paralysis of her left side. Kapuzki then referred her to a local physician for examination and treatment. The symptoms persisted, and on July 24, her doctor ordered her admission as a patient at San Clemente General Hospital. When she was released from the hospital on July 31, Maher still suffered from residual visual loss and weakness on her left side.

On September 10, 1979, Maher returned to work. However, her continuing disability made it impossible for her to perform her duties. As a result, the hospital terminated her employment. Subsequently, Maher filed a claim for workers' compensation benefits based on the disability she sustained as a result of her treatment for tuberculosis.

San Clemente General contested the claim and argued that Maher's injury did not arise out of or in the course of her employment. The workers' compensation judge agreed with the hospital. He found that the injuries sustained by Maher were not compensable since the tuberculosis patch test was merely diagnostic and had been given to Maher before she commenced her duties at the hospital. The Workers' Compensation Appeals Board denied Maher's petition for reconsideration and this petition followed.

## II.

To be compensable, an injury must "aris[e] out of and in the course of the employment." (Lab. Code, § 3600.)[2] This two-pronged requirement is the cor-

[2]Section 3600 provides in pertinent part: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section

nerstone of the workers' compensation system. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1982) § 10.01 (*Hanna*).) In applying it, this court must be guided by the equally fundamental principle that the requirement is to be liberally construed *in favor of awarding benefits.* (Lab. Code, § 3202; *Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 777-778 [100 Cal.Rptr. 377, 494 P.2d 1]; *Garza v. Workmen's Comp. Appeals Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *Scott v. Pacific Coast Borax Co.* (1956) 140 Cal.App.2d 173, 178 [294 P.2d 1039].)

The principal issue presented here is whether the injury Maher sustained as a result of the medical treatment required by her employer meets this standard.

■ The requirement of Labor Code section 3600 is twofold. On the one hand, the injury must occur "in the course of the employment." This concept "ordinarily refers to the time, place, and circumstances under which the injury occurs." (2 *Hanna, supra,* § 9.01(1)(b), fn. omitted.) Thus " '[a]n employee is in the "course of his employment" when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do.' " (*State Comp. Ins. Fund v. Indus. Acc. Com.* (1924) 194 Cal. 28, 33 [227 P. 168].) And, ipso facto, an employee acts within the course of his employment when " 'performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied.' [Citation.]" (*Id.,* at p. 35, italics omitted.)

In this case, the parties do not dispute that San Clemente General Hospital required Maher to undergo antituberculosis therapy as a necessary condition of the performance of her employment contract. As such, there is no real dispute that Maher's injuries meet the requirement that they occur "in the course of" employment.

On the other hand, the statute requires that an injury "arise out of" the employment. Whether this standard has been met in this case is a more difficult question. It has long been settled that for an injury to "arise out of the employment" it must "occur by reason of a condition or incident of [the] employment . . . ." (*Employers etc. Ins. Co. v. Ind. Acc. Com.* (1953) 41 Cal.2d 676, 679

---

3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees *arising out of and in the course of the employment* . . . in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence. . . ." (Italics added.)

[263 P.2d 4].) That is, the employment and the injury must be linked in some causal fashion. (*Kimbol* v. *Industrial Acc. Commission* (1916) 173 Cal. 351, 353 [160 P. 150].) ▨▨▨▨▨ However, "[i]f we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause. [Citation.]" (*Employers etc. Ins. Co.* v. *Ind. Acc. Com.*, *supra*, 41 Cal.2d at p. 680.)[3]

The particular question as to whether an injury which has been caused by an employer-required medical treatment for a preexisting, *nonindustrial* injury meets this standard appears to be one of first impression in this state. However, decisions rendered in analogous cases demonstrate that such injury conforms to the requirement set forth in section 3600.

The rule has been long established in workers' compensation cases that "an employer takes the employee as he finds him at the time of the employment." (*Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].) In *Ballard,* for example, the employer's physicians prescribed drugs for treatment of an employee's *industrial* injury. However, the employee's own preexisting personality characteristics made him more susceptible to addiction and he became dependent on the drugs as a result. Yet, the court held that the employee was entitled to compensation for the disability caused by the addiction. (*Id.,* at pp. 837-839.) This case teaches that had Maher's tuberculosis been an industrially caused disease her propensity to react adversely to antituberculosis medication would not have barred her from compensation for the adverse effects of the medication.

Another line of cases holds that the presence of an industrial injury is not always a prerequisite for compensability where injury results from the medical care which was required by the employer. The rule is well settled that where an

---

[3]Amici assert that, in addition to requiring a compensable injury to "arise out of" the employment, the Labor Code requires *separately* that the injury be "proximately caused" by the employment. They contend that the proximate cause requirement was not met here.

Indeed, Labor Code section 3600, subdivision (c) requires the injury to be proximately caused by the employment. However, the definition of "proximate cause" in workers' compensation cases is not identical to that found in common law tort principles. In applying this requirement, "reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee. [Citation.]" (*Truck Ins. Exchange* v. *Ind. Acc. Com.* (1946) 27 Cal.2d 813, 816 [167 P.2d 705].) In fact, the proximate cause requirement of Labor Code section 3600 has been interpreted as merely elaborating on the general requirement that the injury arise out of the employment. (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1950) 95 Cal.App.2d 804, 806 [214 P.2d 41].) As such, " ' "[t]he essential prerequisite to compensation is that [the] danger from which the injury results be one to which [an individual] is exposed as an employee in his particular employment." ' " (*Id.,* at p. 809.) "All that is required is that the employment be one of the contributing causes without which the injury would not have occurred." (*Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 473 [87 Cal.Rptr. 563].) Applying this standard to this situation, it should be clear that if petitioner's injuries meet the general requirement that they arise out of her employment, of necessity, the question of proximate cause will be answered. In the factual context here, the two questions are not essentially different.

employee submits to an inoculation or a vaccination *at the direction of the employer and for the employer's benefit,* any injury resulting from an adverse reaction is compensable under the Workers' Compensation Act. (*Roberts* v. *U.S.O. Camp Shows, Inc.* (1949) 91 Cal.App.2d 884, 885 [205 P.2d 1116] and cases there cited.) The *Roberts* case illustrates this point.

In *Roberts,* U.S.O. Camp Shows, Inc. required one of its employees, a musician, to undergo various inoculations for immunization against certain diseases. As a result of the inoculations, which were provided by the employer's physicians, Roberts contracted encephalitis. The resulting incapacity was held to be compensable. The court noted that "in every American jurisdiction in which the question has arisen . . . [it has been held that] '[i]ncapacity caused by illness from vaccination or inoculation may properly be found to have arisen out of the employment where such treatment is submitted to *pursuant to the direction or for the benefit of the employer.* . . .'" (*Roberts* v. *U.S.O. Camp Shows, Inc., supra,* 91 Cal.App.2d at p. 885, citations omitted, italics added; accord, *Suniland Toys and Juvenile Furniture, Inc.* v. *Karns* (Fla. 1963) 148 So.2d 523 [adverse reaction to typhoid injections administered with employer's active assent and approval held compensable]; *Alewine* v. *Tobin Quarries* (1945) 206 S.C. 103 [33 S.E.2d 81] [death resulting from smallpox vaccination required by employer as a condition of employment held compensable].)[4]

This case presents an issue similar to that involved in *Roberts.* In both *Roberts* and this case there was essentially no industrial injury in the traditional sense. Instead, compensability was found because the employer either directed or benefited from the requirement that the employee submit to medical treatment. Indeed, the only real difference between *Roberts* and this case is that the medical treatment which caused the injury in *Roberts* was preventive, whereas it was therapeutic here. Otherwise, the rationale of *Roberts* applies with equal persuasiveness to Maher's case.

Respondents cite several cases from sister states denying compensation where injury occurred as a result of medical testing or inoculations ad-

---

[4]The Workers' Compensation Appeals Board also has awarded compensation in cases involving employer-required inoculations.

In the case of *Meyer* v. *Atchison, Topeka and Santa Fe Ry. Co.* (1941) 6 Cal.Comp.Cases 308, an employee was required to undergo vaccination as a condition of entering employment. The vaccination caused injury to the employee and it was found that the injury "[arose] out of and [occurred] in the course of the employment." (Accord, *Wise* v. *Pacific Electric Ry. Co.* (1942) 8 Cal.Comp.Cases 17; but cf. *Royer* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1917) 4 I.A.C. 159. [Injury from vaccination given prior to entry into employment, but required before employment could begin, was held not compensable. The controlling factor here seemed to be that the vaccination had been administered before any employment relationship had commenced.])

ministered by the employer in conformance with state health requirements.[5] These cases hold that an employer is not liable for compensation in such circumstances because the injury arises from a requirement of state law. Since the legislation was enacted for the benefit of the public and imposed on the employer, it cannot be held to be a requirement of employment.[6] Relying on these cases and on the fact that tuberculosis testing is required by California law,[7] respondents assert that the treatment given Maher was for her benefit and for the benefit of the public in general. Accordingly, they contend that Maher should be denied compensation for her injuries.

The patch test administered here was required by state law. If petitioner had suffered an injury as a direct result of the patch test, she could have been denied compensation under the cases cited by respondents. It should be noted, however, that the cases cited by respondents all involved injury resulting from *state*-required medical *testing, not* injury from medical *treatment* required by an *employer* as a consequence of test results.

In this case, it was the treatment for petitioner's alleged tuberculosis which caused the injury, not the patch test. And San Clemente General Hospital required the treatment as a *condition of continued employment.*[8] Thus, petitioner's employment, at a minimum, was the *sine qua non* that required petitioner to undergo the treatment and suffer the injury. California law does not require that employment be the sole cause of an injury, only that it be a concurrent or contributory cause. (*Employers etc. Ins. Co.* v. *Ind. Acc. Com.*, *supra*, 41 Cal.2d at p. 680.)

The rule cited by respondents with regard to compensation for injuries resulting from medical testing has not been adopted in California. Further, the rule cited by respondents "appears to assume that the employment must be the sole cause of the test or inoculation. It would be more correct to say that the

---

[5]See *Industrial Commission* v. *Messinger* (1947) 116 Colo. 451 [181 P.2d 816]; *Smith* v. *Seamless Rubber Co.* (1930) 111 Conn. 365 [150 A. 110, 69 A.L.R. 856]; *Jefferson Printing Co.* v. *Industrial Commission* (1924) 312 Ill. 575 [144 N.E. 356]; *Krout* v. *J. L. Hudson Co.* (1918) 200 Mich. 287 [166 N.W. 848]; *King* v. *Arthur* (1957) 245 N.C. 599 [96 S.E.2d 846].

[6]See, e.g., *Krout* v. *J. L. Hudson, Co.*, *supra*, 200 Mich. at page 290 [166 N.W. at p. 849].

[7]See California Administrative Code, title 22, section 70723, subdivision (b).

[8]Amici argue that petitioner's medical treatment was required as an alternative to quarantine pursuant to Health and Safety Code section 3285. They assert that Maher's treatment thus was not performed under the direction or control of her employer and, therefore, did not arise out of her employment. Health and Safety Code section 3285 does permit the local health officer to examine persons suspected of having tuberculosis and to order their quarantine for treatment if necessary for the protection of public health. However, the record in this case indicates that petitioner was ordered to undergo treatment as a condition of continued employment, not as an alternative to quarantine by the local health officer. Furthermore, there is nothing in the record in this case which indicates that any action was contemplated or had been taken pursuant to Health and Safety Code section 3285 regarding Maher's suspected tuberculosis.

employment need only be a concurring cause. If the requirement of the test or inoculation applied to everyone regardless of his employment, for example, if everyone were required to have a smallpox vaccination during an epidemic, no special work-connection would exist. But if this particular test is a condition of holding this particular job, then the employment is a concurrent cause of the test; the employee undergoes the test both because the employment requires it and because the state requires it if he is to occupy that job. In other words, if it had not been for the exigencies of the employment, the employee would not have taken that test." (1A Larson, The Law of Workmen's Compensation (1982) § 27.32, fn. omitted.)

Here, the California Administrative Code requires not the general public, but only persons employed by hospitals, to undergo testing for tuberculosis.[9] Thus, had it not been for the "exigencies" of petitioner's employment, she would not have taken the patch test and would not have had to undergo treatment for tuberculosis. Also, the employer clearly benefited from the treatment that Maher underwent since Maher's usefulness to San Clemente General Hospital as a nursing assistant would have been significantly lessened. Without this treatment, she would not have been permitted to come into contact with patients.[10]

The Workers' Compensation Appeals Board focused upon the tuberculosis skin test and held that since it did not cause the injury to petitioner and occurred prior to her employment, the injury did not arise out of or in the course of her employment.

However, there is no dispute that it was the *treatment* to which petitioner submitted which caused her illness and the treatment was required as a condition of her continued employment. While the medical care was necessitated by petitioner's preexisting nonindustrial tuberculosis, it was clearly required for the benefit of both the employer and the employee. The record also indicates that petitioner sought treatment from individuals recommended by her employer.

Prior California cases indicate that injury from medical treatment is compensable where the treatment is required at least partially for the employer's benefit or where it is required as a condition of employment. This is true whether the medical treatment aggravates a preexisting industrial injury or a preexisting nonindustrial condition (*Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 473-474 [87 Cal.Rptr. 563], or whether the treatment is "furnished by the employer, his insurance carrier, or was selected by the

[9]See California Administrative Code, title 22, section 70723.

[10]California Administrative Code, title 22, section 70723, subdivision (d) provides that "Employees known to have or evidencing symptoms of infectious disease shall be removed from contact with patients."

employee" (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233-234 [60 P.2d 276]).

In finding that petitioner is entitled to compensation, this court merely applies these previously enunciated principles to a slightly different factual setting. It is clear that petitioner's injury was linked in some causal fashion to her employment. (*Kimbol* v. *Industrial Accident Commission, supra,* 173 Cal. at p. 353.) Further, it is evident that petitioner was " 'performing a duty imposed upon [her] by [her] employer and one necessary to perform before the terms of the contract [would be] mutually satisfied.' " (*State Comp. Ins. Fund* v. *Ind. Acc. Com., supra,* 194 Cal. at p. 35, italics omitted.) As such, her injury arose out of and in the course of her employment.

## III.

The employee in this case underwent treatment for a preexisting nonindustrial illness as a condition of continued employment. Not only was the treatment of benefit to the employer but it was the direct cause of the injury sustained by the employee. Under these circumstances, and in light of the legislative mandate to construe the Workers' Compensation Act liberally in favor of awarding benefits,[11] this court holds that the disability in this case arose out of and in the course of employment. As such, it is compensable. Accordingly, the decision of the Workers' Compensation Appeals Board is hereby annulled, and this case is remanded to the Board.

Mosk, J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

---

[11]See Labor Code section 3202.