[No. B153284. Second Dist., Div. Two. Apr. 3, 2003.]

GARY WEBER, Plaintiff and Appellant, v.
UNITED PARCEL SERVICE, INC., Defendant and Respondent.

## Counsel

Law Offices of Cohen & Rudd, Arlan A. Cohen; Goldberg, Katzman & Shipman and April Strang-Kutay for Plaintiff and Appellant.

Morrison & Foerster, Josephine Staton Tucker and Steven M. Zadravecz for Defendant and Respondent.

## Opinion

**DOI TODD, J.**—Gary Weber appeals the dismissal of his action for negligence against his former employer, United Parcel Service, Inc. (UPS), after the trial court sustained the demurrer to his first amended complaint without leave to amend. Weber suffered permanent injuries as a result of the growth of a benign brain tumor that was not diagnosed following hearing tests administered by UPS to its employees. The issue presented in this appeal is whether Weber's civil action in tort against UPS is barred by the California Workers' Compensation Act (Lab. Code, § 3600 et seq.) (the Act), which UPS contends provides his sole and exclusive remedy in this case. We conclude that Weber's claim comes under the exclusive provisions of section 3600, as an injury "arising out of and in the course of the employment." Accordingly, we affirm the judgment of dismissal.

■ " 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' " (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043 [111 Cal.Rptr.2d 260], quoting *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### Factual and Procedural Background

"Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited

purpose of determining whether the plaintiff has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885 [66 Cal.Rptr.2d 888, 941 P.2d 1157].)

According to Weber's first amended complaint, UPS employed Weber as an aircraft mechanic. While Weber was employed by UPS, the company required its employees to undergo hearing tests in accordance with the company's internal safety policies and to comply with California Code of Regulations, title 8, section 5097 (section 5097). From December 10, 1989, to August 14, 1999, Weber received hearing tests as a condition of his employment to determine whether the noise to which he was exposed on the job had adversely affected his hearing.

UPS did not administer the hearing tests itself, but contracted with defendant TK Group to administer the tests on its behalf, and to report the results to UPS. In turn, UPS reported the results to Weber. Weber relied on UPS to properly conduct and evaluate his hearing tests, to advise him of any hearing loss, and to inform him if any further medical evaluation was necessary.

At some point the tests revealed significant abnormalities in Weber's hearing, which should have prompted suspicion of a "medical pathology of the ear" unrelated to noise exposure or to the use of hearing protection. Specifically, the test results showed that Weber was gradually losing his hearing in his left ear only, which was a symptom of a "growing brain tumor." But UPS failed to have the hearing tests analyzed by a qualified professional and failed to demand that TK Group have the results properly analyzed, and thus failed to recognize the abnormality in Weber's hearing tests showing the need for further evaluation. Further, to the extent UPS knew that Weber's tests showed significant abnormalities in his hearing, UPS failed to notify Weber of the findings or their medical significance. In the absence of any notice to the contrary, Weber believed that the results of his hearing tests had shown no significant abnormalities signaling a need for further medical evaluation, and Weber sought none.

In April 2000 Weber received a letter from HTI, Inc.,[1] indicating that the results of Weber's previous hearing tests had raised a suspicion of "medical pathology of the ear [which was] unrelated to noise exposure or the use of noise protection equipment." HTI advised Weber that he should seek further medical evaluation in light of these findings.

Weber was diagnosed with a benign "growing brain tumor," which affected, among other things, his hearing in one ear. Because of the delay in

---

[1]The first amended complaint contains no information about HTI, Inc., but UPS informed us in its brief that HTI, Inc., replaced TK Group in administering hearing tests for UPS.

diagnosis, the tumor had become enlarged, and a "more radical surgical procedure" was required to remove it, causing Weber to suffer scarring, facial paralysis, loss of balance, and permanent deafness in his left ear.

UPS demurred to Weber's first amended complaint on the sole ground that because Weber had alleged that his injuries arose out of his employment with UPS, the Act provided Weber his sole and exclusive remedy, and barred his civil action in tort against UPS. In support of its demurrer, UPS relied on *Wickham v. North American Rockwell Corp.* (1970) 8 Cal.App.3d 467 [87 Cal.Rptr. 563] (*Wickham*), in which Division Five of this court held that "aggravation of a preexisting illness which is the result of negligent diagnostic treatment voluntarily provided by an employer is compensable under [Labor Code] section 3600 regardless of the cause of the preexisting illness . . . ." (*Id.* at pp. 473-474.)

In opposition to the demurrer, Weber relied on *Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551 [105 Cal.Rptr. 358, 503 P.2d 1366], for the proposition that when an employer undertakes to provide diagnostic treatment to an employee, such as a hearing test, it owes a duty to act in a reasonable manner and to report abnormal findings to the employee. In *Coffee*, the Supreme Court recognized the assumption of such a duty in the context of a tort action. Weber argued that *Coffee* effectively overruled *Wickham*.

The superior court sustained UPS's demurrer without leave to amend, ruling: "*Wickham* . . . provides that aggravation of a pre-existing illness, which is the result of negligent diagnostic treatment voluntarily provided by an employer, is compensable under the Worker's Compensation Act, regardless of the cause of the pre-existing illness. Plaintiff alleges that he was required to undergo radical treatment because of the Defendant's failure to diagnose his pre-existing illness. Such conduct is within the course of employment. Plaintiff's claims are barred by the exclusivity provisions of the Worker's Compensation Act."

Weber moved for reconsideration, again arguing that *Coffee* had overruled *Wickham*. He also requested leave to amend to allege "that agents of UPS undertook to advise Mr. Weber about the results of his hearing tests; that they gave false reassurance to him; that he relied on those false reassurance [*sic*] and that this reliance kept him from seeking advice from others in the hearing field, with consequent harm flowing from the absent [*sic*] of competent evaluation of his hearing abnormality" so as to "make this case's pleadings even more congruent with that of *Coffee*." The trial court denied the motion for reconsideration, and dismissed UPS from the action with prejudice. This appeal followed.

## DISCUSSION

■ The essence of Weber's claim is that although UPS undertook testing of its employees to detect hearing abnormalities due to noise exposure, it negligently failed to discover, diagnose or inform Weber of a significant hearing abnormality, which was a symptom of a growing brain tumor. UPS's negligence caused a delay in treatment of Weber's preexisting condition which resulted in permanent disability and injury. Critical to the analysis of Weber's claim is the undisputed fact that but for his employment with UPS, Weber would have no basis for any claim against UPS under any legal theory. This fact mandates the conclusion that Weber's exclusive remedy lies in workers' compensation.

■ Under Labor Code section 3600,[2] an employer is liable for workers' compensation benefits without regard to negligence for any injury sustained by an employee in the course of the employment. In order for the injury to be compensable, the injury must be proximately caused by the employment, and the employee must be acting within the course of employment and performing services growing out of the employment at the time of the injury.

"Proximate cause" in workers' compensation law differs from proximate cause in negligence law. "[T]he proximate cause requirement of Labor Code section 3600 has been interpreted as merely elaborating on the general requirement that the injury arise out of the employment. [Citation.] . . . *'All that is required is that the employment be one of the contributing causes without which the injury would not have occurred.' (Wickham v. North American Rockwell Corp. [, supra,] 8 Cal.App.3d [at p.] 473.)" (Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 734, fn. 3 [190 Cal.Rptr. 904, 661 P.2d 1058] (*Maher*), italics added.) "California law does not require that employment be the sole cause of an injury, only that it be a concurrent or contributory cause. [Citation.]" (*Id.* at p. 736.)

UPS contends that *Wickham, supra,* 8 Cal.App.3d 467, is directly on point and mandates the conclusion that Weber's claim is cognizable only under the Act. We agree.

---

[2]Labor Code section 3600 provides in relevant part: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur: [¶] . . . [¶] . . . Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] [And] [w]here the injury is proximately caused by the employment, either with or without negligence."

In *Wickham*, the defendant employed a staff of physicians to examine, diagnose, and treat certain medical conditions of its employees due to respiratory health risks posed by conditions of their employment. The medical care provided by the employer included an annual chest X-ray of the plaintiff, but the physician who took and analyzed the plaintiff's X-ray failed to diagnose active tuberculosis and a progressive inflammation of the plaintiff's lung, which the plaintiff alleged prevented early and correct treatment of his condition. On appeal following the sustaining of the employer's demurrer, *Wickham* noted that "the treatment in the instant case was preventive and diagnostic, as opposed to curative," and held that "aggravation of a preexisting illness which is the result of negligent diagnostic treatment voluntarily provided by an employer is compensable under [Labor Code] section 3600 regardless of the cause of the preexisting illness . . . ." (*Wickham, supra*, 8 Cal.App.3d at pp. 473-474.)

*Wickham* was cited with approval by our Supreme Court in *Maher, supra*, 33 Cal.3d at page 737, which noted that "[p]rior California cases indicate that injury from medical treatment is compensable where the treatment is required at least partially for the employer's benefit or where it is required as a condition of employment. This is true whether the medical treatment aggravates a preexisting industrial injury or a preexisting nonindustrial condition (*Wickham* [, *supra*,] 8 Cal.App.3d [at pp.] 473-474 [)] . . . , or whether the treatment is 'furnished by the employer, his insurance carrier, or was selected by the employee' (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233-234 [60 P.2d 276])."

In *Maher*, a nurse's assistant was required to test for tuberculosis prior to commencing employment at a hospital. The test result was positive, and the hospital required the employee to undergo treatment as a condition of employment. The employee suffered an adverse reaction to the treatment resulting in disability, which the court held was compensable under the Act. "The employee in this case underwent treatment for a preexisting nonindustrial illness as a condition of continued employment. Not only was the treatment of benefit to the employer but it was the direct cause of the injury sustained by the employee. Under these circumstances, and in light of the legislative mandate to construe the Workers' Compensation Act liberally in favor of awarding benefits, this court holds that the disability in this case arose out of and in the course of employment. As such, it is compensable." (*Maher, supra*, 33 Cal.3d at p. 738, fn. omitted.)

Similarly, in *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499 [125 Cal.Rptr. 872], the court held the widow and minor children of a deceased employee were entitled to workers' compensation benefits as their exclusive

remedy, where the employee had died after receiving inadequate treatment at the employer's emergency first aid station. The court rejected the plaintiffs' contention that since the employee's death was unrelated to the activities of his employment, the injuries did not arise in the course of employment, holding that " '[r]ecovery of compensation is not conditional upon the employee's rendering service to the employer at the time of the injury.' [Citations.]" (*Id.* at p. 504.) Rather, " 'an injury received while enjoying an incident of employment solely for the benefit of the employee is one arising out of and in the course of employment . . . .' [Citations.]" (*Id.* at p. 505.)

In this case, the hearing tests mandated by section 5097 were required to determine if a standard threshold shift in Weber's hearing due to noise exposure on the job had occurred. Section 5097 requires that, in the event a standard threshold shift occurs, "the employer shall . . . [¶] . . . [¶] [r]efer the employee for a clinical audiological evaluation or an otological examination, as appropriate, if additional testing is necessary or if the employer suspects that a medical pathology of the ear is caused or aggravated *by the wearing of hearing protectors* . . . [¶] [and] [i]nform the employee of the need for an otological examination if a medical pathology of the ear which is unrelated to the use of hearing protectors is suspected." (§ 5097, subd. (d)(5)(C), (D), italics added.) The employer is required to take such steps "[*u*]*nless* a physician determines that the standard threshold shift is *not work related* or aggravated by occupational noise exposure." (§ 5097, subd. (d)(5), italics added.)

Accordingly, in this case as in *Wickham*, UPS was required to provide these annual hearing examinations to certain classes of employees due to the inherent health hazard of their jobs—potential hearing loss associated with exposure to noise. In administering hearing tests in accordance with section 5097, UPS undertook to diagnose a work-related standard threshold shift in Weber's hearing. UPS provided the hearing tests for Weber's benefit, and in accordance with the company's policies and section 5097. The alleged negligent administration of these hearing tests and the resulting injury to Weber therefore grew out of and were incidental to Weber's employment with UPS.[3] Accordingly, we find that Weber's injury—the aggravation of his brain tumor caused by UPS's failure to detect and/or notify Weber of a standard threshold shift in his hearing—arose out of and in the course of his

---

[3]We reject Weber's assertion that UPS's failure to comply with the requirements of section 5097 cannot be actionable under the Act because section 5097 contains no reference to workers' compensation law and addresses injuries that are unrelated to employment. Weber clearly does not assert a claim for violation of section 5097. Rather, he claims that UPS was "negligent per se" for violating section 5097. Since Weber's claim is fundamentally a negligence claim, we need not determine what remedies might be available for violation of section 5097.

employment, and that his exclusive remedy for his employer's alleged negligence lies under the Act.

Finally, we reject Weber's contention that the Supreme Court's decision in *Coffee v. McDonnell-Douglas Corp., supra,* 8 Cal.3d 551, overruled *Wickham.* Quite simply, *Coffee* did not arise under the Act, as it involved alleged negligence by a prospective employer providing a *preemployment* physical examination. Weber contends that the *Coffee* court must have considered the Act and rejected its application to the facts before it without discussion. But " '[a] decision is not . . . authority except upon the point actually passed upon by the Court and directly involved in the case.' [Citation.]" (*Padilla v. Department of Alcoholic Beverage Control* (1996) 43 Cal.App.4th 1151, 1156 [51 Cal.Rptr.2d 133].) The court in *Coffee* never considered the Act, and the case cannot stand for the proposition that the Act did not bar the plaintiff's negligence claim against the employer in that case.

## DISPOSITION

The judgment of dismissal as to UPS is affirmed. Costs on appeal are awarded to respondent.

Boren, P. J., and Ashmann-Gerst, J., concurred.