Filed 11/24/20  Marquez v. Los Angeles County Employees etc. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EDWARD MARQUEZ, | B295673 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BS172111 |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Reversed and remanded with directions.

Steven P. Rice and Francis J. Boyd for Defendant and Appellant.

Lewis, Marenstein, Wicke, Sherwin & Lee, Thomas J. Wicke and Joon Y. Kim for Plaintiff and Respondent.

## INTRODUCTION

The question presented in this case is whether a county employee who is found to be unqualified for a new position and who then suffers a psychological disability triggered in part by the failure to obtain that position is entitled to service-connected disability retirement under Government Code section 31720.[1] We conclude the employee is not so entitled.

Edward Marquez worked for the County of Los Angeles for approximately 20 years as an officer for the Los Angeles County Office of Public Safety (Office of Public Safety). When that agency merged into the Los Angeles County Sheriff's Department (Sheriff's Department), Marquez was conditionally offered the position of deputy sheriff, provided he could establish that he was qualified for the position by passing a background check, medical examination, psychological examination, and polygraph examination.

Marquez failed the psychological examination (i.e., he was determined to be psychologically unfit for the position of sheriff's deputy) and the Sheriff's Department subsequently demoted him to the position of custody assistant. Marquez appealed and while the appeal was pending, Marquez was placed in a temporary assignment. He only worked in that position for a few months before he took a medical leave. Almost immediately thereafter, Marquez applied to the Los Angeles County Employees Retirement Association (Association) for a service-connected disability retirement.

---

[1] All undesignated statutory references are to the Government Code.

As pertinent here, Marquez asserted that he suffered a psychological disability due to the Sheriff's Department's decision to demote him from a sheriff's deputy to a custody assistant. After prolonged administrative proceedings, the Association conceded that Marquez was permanently incapacitated from the performance of the duties of a sheriff's deputy as well as a custody assistant. But although the Association granted Marquez's application for a disability retirement, it found that his disability was not service connected because it related to a personnel decision, not the performance of his job duties. Marquez challenged that decision by filing a petition for a writ of administrative mandamus.

The trial court found that Marquez's psychological incapacity was service connected because the psychological examination was required by the Sheriff's Department as a condition of Marquez's employment. We conclude that the court erred in its legal analysis. Accordingly, we reverse the judgment and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Marquez's Work History and Discipline Incidents

Marquez, who is now 52 years of age, first attempted to become a law enforcement officer in 1998. At that time, he was in training to become a deputy sheriff for the Sheriff's Department. Marquez was directed to resign from the training program due to dishonesty with the proviso that he be allowed to work as a police officer with the Office of Public Safety. Marquez began working for the Office of Public Safety in June 1989. He worked in that capacity until 2010 and, due to the physical demands of the job, sustained a number of orthopedic injuries, mainly to his spine.

3

He received multiple worker's compensation awards relating to those injuries.

While employed by the Office of Public Safety, Marquez was disciplined and suspended without pay on three occasions. In February 1991, Marquez was convicted of driving under the influence of alcohol and was subsequently suspended without pay for 15 days. He was later cited for driving on a restricted license. In October 1992, Marquez was suspended for 20 days after he improperly pulled over a car containing his ex-girlfriend and her boyfriend, attempted to issue a citation, and generally disregarded policy for personal reasons. And in November 2005, Marquez was suspended for five days after disobeying a direct order from a superior officer directing him not to leave his station until the officers scheduled to relieve him had reported for duty.

## 2. Marquez's Disqualification for Sheriff's Deputy

The Office of Public Safety was dissolved in 2010 and its functions were absorbed by the Sheriff's Department. As part of the merger process, Marquez filled out an application for the position of deputy sheriff in January 2010.

In June 2010, Marquez was promoted to the position of deputy sheriff, conditioned on his ability to pass a background check, medical exam, psychological exam, and polygraph interview. The Sheriff's Department's psychologist concluded, however, that Marquez was not a suitable applicant for the position of deputy sheriff and was better suited for the position of custody assistant. She determined, based mainly on Marquez's history of job-related discipline, that Marquez was psychologically unfit for the duties of a sheriff's deputy.

On June 29, 2010, the Sheriff's Department notified Marquez that he had been disqualified for the position of deputy

4

sheriff. At that time, Marquez was offered the position of custody assistant. He initially declined to take that position and appealed the disqualification decision. In July 2010, Marquez accepted the custody assistant position. While his appeal was pending, however, Marquez was given a light-duty assignment at Pitchess Detention Center.

In connection with the appeal, Marquez was examined by two additional doctors. Marquez's counsel referred him for an examination with Dr. Frazier, who concluded that Marquez was capable of performing the duties of a sheriff's deputy. In his view, Marquez was not experiencing extreme levels of anxiety or depression and saw no evidence of maladaptive personality traits that would impair his ability to perform the tasks of a peace officer.

Marquez was also examined by Dr. Ball, who expressed serious concern about Marquez's psychological fitness for duty and opined that he was not fit for duty as either a deputy sheriff or a custody assistant.

On September 15, 2010, the County of Los Angeles notified Marquez that his appeal had been denied. Ten days later, on September 25, 2010, Marquez began a medical leave authorized by Dr. Rosenberg, a psychiatrist. He never returned to work and never worked as a custody assistant.

Marquez's personnel file reflects that he was demoted from deputy sheriff to custody assistant as of October 1, 2010, along with 26 other applicants.

3. **Denial of Marquez's Request for Service-connected Disability Retirement**

In October 2010, less than a month after he began a medical leave, Marquez filed a request for service-connected

disability retirement under section 31720, claiming that he was permanently incapacitated for the positions of custody assistant and deputy sheriff based on sinus, orthopedic, and psychiatric injuries.[2]

With respect to the psychiatric injury, additional examinations were performed. Dr. Swanson, a clinical psychologist, saw Marquez in December 2010 and concluded he suffered from anxiety and depressive symptoms and was permanently and substantially incapacitated. He stated that Marquez's symptoms had manifested following an orthopedic injury and chronic pain, and "secondary conditions involved workplace changes/demoted/work place hostility." He also opined that the pain disorder and sleep insomnia were likely to remain chronic.

Dr. Halote, a psychologist, saw Marquez four times between November 2010 and August 2011. Initially, Dr. Halote found Marquez to be temporarily totally disabled from a psychological perspective and that his symptoms were the result of physical injuries and job-related stress. In August 2010, Dr. Halote concluded that Marquez had "achieved a state of maximum medical improvement from a psychological point of view" and was then suffering from "permanent psychological impairment as a result of the residual emotional symptomatology associated with his industrially sustained orthopedic injuries and cumulative stress." He further concluded that Marquez was not able to return to work at his usual and customary occupation.

---

[2] The Association found that Marquez was not permanently incapacitated by either the orthopedic or sinus injuries. Marquez did not challenge that determination.

Dr. Glaser, a psychiatrist, performed an agreed medical examination in mid-2011. He concluded that Marquez suffered from an adjustment disorder and pain disorder, and that the predominant cause of those disorders "is the June 14, 2010 demotion and sequelae of pending retirement, loss of work identity, and financial strain. The demotion is a personnel action. … [¶] Contributing factors to Mr. Marquez's psychiatric condition, but neither to a substantial nor predominant degree, include the numerous physical injuries he suffered throughout the course of his employment with the County of Los Angeles and sequelae of chronic pain, in addition to his exposure to environmental factors that led to chronic sinus problems."

In April 2012, Dr. Rothberg, a psychiatrist, prepared a comprehensive psychiatric report for the Association. He provided a lengthy summary of Marquez's medical history and background. Stated briefly, he concluded "Marquez is capable of performing the usual and customary duties of a Deputy Sheriff or Custody Assistant. His inability to work in that job was really caused by a disqualification due to some ethical considerations which have nothing to do with his psychological capacity. The actual psychological injury in this case is very modest."

In July 2012, the Association determined that Marquez was not permanently incapacitated from the performance of his job duties. Marquez appealed the decision and requested an administrative hearing.

4.      **Denial of Marquez's Administrative Appeal**

Marquez participated in additional examinations in connection with his appeal from the Association's denial of his request for service-connected disability retirement. As before, the

7

examining physicians differed on certain aspects of their diagnosis of Marquez's psychological condition.

Dr. Weisman met with Marquez in April 2014. He concluded that Marquez was unfit for duty as a sheriff's deputy due to chronic emotional dysregulation and lapses in honesty, integrity, and good judgment. He characterized these elements as chronic characterological traits.

In June 2014, Marquez was hospitalized and completed an in-patient detoxification course from multiple drugs, mainly alcohol, Soma, and Norco.

Dr. Rothberg evaluated Marquez again in July 2015. He reiterated that when Marquez left work, he had been capable of performing the usual duties of a deputy sheriff. In 2015, however, Marquez was no longer able to do so due to psychological factors. He opined that Marquez's then-current condition, i.e., depression, "is to a great extent related to his characterological issues" and that employment did not play a significant role in his condition.

The referee conducted a hearing on Marquez's appeal in March 2015 and issued her final decision in July 2017. She stated there was "no dispute" that Marquez was permanently incapacitated for the performance of his duties due to his psychological condition. The medical reports and opinions conflicted, however, on the issue of industrial causation. The referee concluded that Marquez's injury arose out of employment because it related to his disqualification for the position of deputy sheriff. But she concluded that Marquez did not sustain the injury "in the course and scope of employment," because it was not related to his performance of job duties and was instead related to the selection process for a possible promotion to deputy sheriff. As to the orthopedic and sinus injuries, the referee

concluded there was no evidence that Marquez was disabled by those conditions. Accordingly, the referee recommended that the Association deny Marquez's request for service-connected disability retirement and instead grant him a nonservice-connected disability retirement on the basis of psychological disability.

The Association adopted the referee's findings in November 2017 and notified Marquez that he could challenge the decision by way of a petition for writ of mandate.

## 5. Trial Court Proceedings and Decision; Appeal

In January 2018, Marquez filed a petition for writ of mandate under Code of Civil Procedure section 1094.5. Marquez did not challenge the Association's finding that he was not incapacitated by either his spinal or sinus injuries. But he alleged that his psychological incapacity was service connected and sought a writ of mandate directing the Association to set aside its decision and grant his request for a service-connected disability retirement.

Marquez argued that the opinions of Dr. Glaser, Dr. Halote, and Dr. Swanson established that his psychological disability was service connected. Specifically, he contended that the psychological fitness-for-duty testing was required by the County as a condition of his continued employment. As a consequence of the testing, Marquez was demoted and his "emotional stability deteriorated and he began suffering disabling symptoms of anxiety, depression, feelings of worthlessness, and an aggravation of his somatic preoccupation, pain, fatigue, and physical invalidism."

The Association, by contrast, argued the referee's decision was correct. Specifically, the Association contended that

9

Marquez's psychological condition was the result of depression relating to his inability to qualify for the promotion to deputy sheriff. Moreover, Marquez was disqualified for that position due primarily to his own misconduct that had resulted in disciplinary action, and was therefore not reasonably considered "in the scope of employment."

The court found that Marquez was "a relatively poor County employee," noting that he was asked to resign from the Sheriff's Department training program due to dishonesty and had been disciplined several times for misconduct while employed by the Office of Public Safety. Further, the court observed that "Marquez demonstrated indifference towards his job. He stayed home from work by falsely calling in sick, and he filed numerous workers' compensation claims. … He was deceptive in that, after he filed his disability application claiming emotional distress and an inability to work, he operated a tattoo studio. … He also failed two lie detector tests in his effort to become a deputy sheriff."

In considering whether Marquez's failure to qualify for the deputy sheriff position arose out of and was in the course of his usual employment as required by section 31720, the court relied on *Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729 (*Maher*). In that case, a nurse's assistant with tuberculosis was required by her employer to undergo treatment as a condition of employment. When the employee sustained injury from the treatment, she filed a claim for workers' compensation benefits and that claim was denied by the Workers' Compensation Appeals Board. The California Supreme Court annulled the Board's decision, concluding that her injury arose out of and in the course of her employment.

Analogizing to *Maher*, the court stated that Marquez's injury occurred in the course of his employment because, when the Office of Public Safety merged with the Sheriff's Department, Marquez was required to undergo a fitness-for-duty examination as a condition of continued employment. Further, the court found the injury arose out of employment, i.e., was causally related to employment, because Marquez's failure to pass the fitness-for-duty test required by his employer caused his psychological injury. The court stated, "The Referee concluded that Marquez's psychological condition arose from his employment because he was disqualified from the deputy sheriff position, but wrongly decided that this disqualification did not occur in the course and scope of his employment because the testing was a precursor to being selected for the position. … Just as Maher was performing a duty imposed upon her by her employer ([*Maher, supra,*] 33 Cal.3d at [p.] 738), Marquez was subjected to a fitness exam because his employer required it. His exam failure, demotion, and psychological condition were caused by this testing, and arose in the course of his employment." The court did not address whether Marquez's employment contributed substantially to his incapacity, an additional requirement under section 31720.[3]

The court granted Marquez's petition for writ of mandate and ordered the Association to set aside its prior decision and grant Marquez's request for a service-connected disability retirement.

The Association timely appeals from the judgment.

---

[3] Because it concluded that "Marquez's failure of the required testing is a sufficient service connection," the court also did not address "the impact of other industrial factors."

11

## DISCUSSION

The Association concedes that Marquez is permanently and totally incapacitated from the duties of deputy sheriff and custody assistant due to a psychological condition. Accordingly, the only questions before us are whether Marquez's psychological disability arose "out of" and "in the course of" employment, and whether his employment "substantially contributed" to his disability, as required under section 31270.

### 1.    Standard of Review

"Where, as here, a trial court reviews a final administrative decision that substantially impacts a fundamental vested right, the trial court both examines the administrative record for errors of law and exercises its independent judgment upon the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816, fn. 8 (*Fukuda*); *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 (*Bixby*); *Levingston v. Retirement Board* (1995) 38 Cal.App.4th 996, 1000 (*Levingston*).) In carrying out this independent review, however, the trial court must afford the agency's decision a strong presumption of correctness and must impose upon the petitioner the burden of showing that the agency's findings are contrary to the weight of the evidence, i.e. the decision was not supported by the preponderance of the evidence. (*Fukuda, supra*, 20 Cal.4th at pp. 808, 817, 819–822; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1077 (*Breslin*).) An abuse of discretion is established if the trial court determines that the findings are not supported by the weight of the evidence. (*Fukuda, supra*, at p. 811.)

" 'Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own

12

findings after first giving due respect to the agency's findings.' (*Fukuda, supra*, 20 Cal.4th at p. 818; see *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 … ; *Levingston*, *supra*, 38 Cal.App.4th at p. 1000.) Thus, while the trial court begins its review with a presumption of the correctness of the administrative findings, the presumption is rebuttable and may be overcome by the evidence. (*Breslin, supra*, 146 Cal.App.4th at p. 1077.) 'When applying the independent judgment test, the trial court may reweigh the evidence and substitute its own findings for those of the [agency], after first giving due respect to the [agency]'s findings.' (*Ibid*.) This includes examining the credibility of witnesses. [Citations.]

"Our task is to determine whether substantial evidence in the administrative record supports the trial court's ruling (*Bixby, supra*, 4 Cal.3d at p. 143, fn. 10), except when the appellate issue is a pure question of law. … We review questions of law de novo. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108.)" (*Alberda v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 214 Cal.App.4th 426, 433–434.)

**2.     The trial court erred in finding that Marquez was entitled to service-connected disability retirement.**

> **2.1.   To qualify for a service-connected disability retirement, Marquez needed to establish that his disability arose out of and in the course of employment and that employment contributed substantially to the disability.**

Under the County Employees Retirement Law of 1937 (§ 31450 et seq.), an employee is entitled to disability retirement benefits if the employee establishes that he or she is

"permanently incapacitated" physically or mentally from the performance of his or her duties. (§ 31720.) As with all statutory retirement systems, the County Employees Retirement Law must be given a liberal construction in favor of the employee to carry out its policy—to " 'recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation … .' " (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 23.)

In order to qualify for service-connected disability retirement—which affords a larger benefit than nonservice-connected disability retirement—Marquez was required to establish that his "incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity. …" (§ 31720, subd. (a).) As the *Maher* court noted, " 'aris[ing] out of' " employment and " 'in the course of' " employment" are distinct requirements.[4] "[F]or an injury to 'arise

---

[4] Although *Maher* was decided in the context of the workers' compensation law, its holding is persuasive. " '[T]he County Employees Retirement Act ... and the Workers' Compensation Act "are related in subject and harmonious in purpose." [Citations.] In fact, courts have looked to workers' compensation law precedent for guidance in contending with similar issues in pension law. [Citations.]' (*Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 578, fn. 4.)" (*Singh v. Board of Retirement* (1996) 41 Cal.App.4th 1180, 1186, fn. 6.) And like section 31720, Labor Code section 3600 provides that, with exceptions, workers' compensation liability exists "in lieu of any other liability whatsoever … against an employer for any injury sustained by his or her employees arising out of and in the course of the employment" if

out of the employment' it must 'occur by reason of a condition or incident of [the] employment ... .' [Citation.] That is, the employment and the injury must be linked in some causal fashion. [Citation.]" (*Maher, supra*, 33 Cal.3d at pp. 733–734.) " '[I]n the course of the employment[ ]' ... 'ordinarily refers to the time, place, and circumstances under which the injury occurs.' [Citation.]" (*Id.* at p. 733; see also *Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1020.) It requires that the employee, when injured, was doing " ' "those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' " (*Maher*, at p. 733.)

Section 31720 also requires that a disability applicant's employment "must contribute substantially to, or be a real and measurable part of, the employee's permanent disability," in order to qualify the employee for a disability retirement. (See *Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 964.)

> **2.2. The court incorrectly relied on *Maher,* which held that a disability may arise out of and in the course of employment if the disability is caused by medical treatment required by the employer as a condition of employment.**

We do not quarrel with the court's finding that Marquez's injury arose during his employment. Marquez was employed by the Office of Public Safety and was required to transfer to the Sheriff's Department in some capacity if he wished to remain

---

specified "conditions of compensation concur ... ." (Lab. Code, § 3600, subd. (a).)

15

employed. This is sufficient to establish that his injury arose during his employment.

We disagree, however, with the court's finding that Marquez's injury arose out of and in the course of his usual employment. As noted, for an injury to arise out of and in the course of employment it must generally occur while the employee is performing the duties for which he was hired.

In making its finding that Marquez's disability arose out of and in the course of employment, the trial court relied principally on *Maher*. There, prior to being hired at a hospital as a nurse's assistant, an employee was required to test for tuberculosis. (*Maher*, *supra*, 33 Cal.3d at p. 732.) The results were positive, indicating that she had contracted the disease at a prior time. (*Ibid*.) The hospital required her to undergo treatment for tuberculosis as a condition of continued employment. The employee suffered an adverse reaction to the treatment, resulting in her disability. (*Ibid*.) The Workers Compensation Appeals Board denied compensation because the test was merely diagnostic and had been given before the employee commenced her duties. (*Ibid*.) On appellate review, however, the court held that the employee was entitled to compensation. The treatment, not the test, was the cause of her injury. (*Id*. at p. 736.) The treatment had been required by the employer as a condition of continued employment. (*Id*. at p. 732.) Further, the employer benefited from the treatment because without it, the employee would not have been permitted to come into contact with patients and perform the duties for which she had been hired. (*Id*. at pp. 737–738.)

The court incorrectly viewed *Maher* as analogous to the present case. The court stated that Marquez "sustained an injury

16

because of his failure on a fitness test he was compelled by his employer to take. The fitness-for-duty process also was for the benefit of the County as it sought to successfully merge the functions of [the Office of Public Safety] and [the Sheriff's Department], and to transition the employment of … police officers into deputy sheriffs. There is a causal connection between Marquez's test failure and his injury, which therefore arose out of his employment."

There is some superficial similarity between *Maher* and the present case. Similar to the nurse's assistant in *Maher*, Marquez took the fitness-for-duty test at the request of his employer and the test revealed a condition that, in the eyes of the Sheriff's Department, rendered him unable to perform his job duties. The similarity ends there, however. The employee in *Maher* was required to undergo medical treatment for her condition and was injured by the treatment. Here, Marquez was not asked to undergo any medical treatment. If the Sheriff's Department had, for example, required Marquez to take psychotropic medication as a condition of employment and Marquez suffered a disabling condition as a result of taking the medication, the analogy would make sense.

But what happened here is entirely different. The fitness-for-duty test caused the Sheriff's Department to conclude that Marquez was unqualified for the position of deputy sheriff. Although Marquez was disappointed and embarrassed by that decision, which triggered some anxiety and other psychological ailments, the Department's decision not to promote Marquez is simply not analogous to the situation in *Maher*, where the employer required the employee to undergo medical treatment and that treatment caused a disabling injury.

17

On a related point, several courts have considered whether an injury sustained during or while training for a physical fitness test required by an employer occurs within the scope of employment. In *Tomlin v. Workers' Comp. Appeals Bd.* (2008) 162 Cal.App.4th 1423, for example, a police officer sought compensation for a running injury he sustained while on vacation. The workers' compensation judge denied compensation because the officer was off duty and on vacation, even though the officer was training for an upcoming and mandatory physical fitness test required by his employer. The Court of Appeal held to the contrary, opining that where a physical fitness test is required by an employer, injury sustained while training for that test is compensable.

The cases relating to test-related injury are of no assistance to Marquez. Although he submitted to the fitness-for-duty test required for the position of deputy sheriff, he was not injured during the psychological examination. He was not injured by the examination. And he was not required to take any action as a consequence of the examination.

In truth, Marquez suffered psychological distress as a result of the Sheriff's Department's decision not to promote him to the position of deputy sheriff. That decision, and Marquez's reaction to it, did not occur in connection with Marquez's performance of his job duties. Stated differently, the relationship between the Sheriff's Department's decision that Marquez was unqualified for the position of deputy sheriff and Marquez's subsequent disabling psychological condition based on that decision is too attenuated for *Maher* or the other cases discussed above to apply. We conclude, therefore, that Marquez's injury did not arise out of and in the course of his employment.

## DISPOSITION

The judgment is reversed. On remand, the trial court shall determine if Marquez is entitled to service-connected disability retirement based on factors other than his failure to pass the fitness-for-duty examination and his failure to obtain the position of deputy sheriff.[5] Los Angeles County Employees Retirement Association shall recover its costs on appeal.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


DHANIDINA, J.

---

[5] In light of our holding, we do not reach the Association's argument that Marquez is not entitled to service-connected disability retirement because his psychological injury was sustained as a consequence of his prior discipline.